SIMON J. O'HERRON vs. WILLIAM GRAY & others.
NORA L. O'HERRON vs. SAME.

Suffolk. January 28, 1897. — June 15, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Remedy of Owner of Stock against One to whom it has been Pledged by Another by whom it has been Embezzled — Guardian and Ward — Estoppel.*

A guardian deposited a certificate of stock owned by and standing in the name of his ward in a bank for safe keeping, and subsequently borrowed money from the bank for his personal use, for which he gave his note and indorsed his ward's certificate in blank " A., by B., Guardian," and deposited it as collateral security for the payment of his note. The note was afterward paid by the guardian, but before its payment, C., the cashier of the bank, fraudulently pledged the certificate as security for his personal debt to D., who took it without notice of C.'s want of authority to pledge it, and supposing him to be in rightful possession thereof. D. then took the certificate to the office of the company issuing it, and asked for a transfer of the stock and for a certificate thereof in his own name, and upon the refusal of the company to make the transfer without the authority of the Probate Court, C., at the request of D., on a petition signed " B., Guardian, by C.," of which neither the guardian nor ward had any knowledge, by publication or otherwise, procured such a decree, and the stock was transferred and a new certificate thereof issued to D. *Held,* that the ward was entitled to a decree against D. for the transfer and delivery of the certificate of stock, and the payment of all the dividends received thereon by D., and, since there was no privity between the bank and D., the fact that the bank was paying the expenses of the plaintiff's litigation is immaterial.

A certificate of stock, although indorsed in blank for the purpose of authorizing the making of an instrument of transfer over the signature, is not a negotiable security.

A ward who is the owner of a certificate of stock which his guardian has indorsed in blank and deposited for safe keeping in a bank, whence it is fraudulently abstracted by the cashier and pledged for his personal debt, is not estopped by the negligence of his guardian from reclaiming his certificate of stock from the person to whom it was pledged by the cashier of the bank.

TWO BILLS IN EQUITY, filed November 21, 1894, to compel the defendants to transfer and deliver to the plaintiffs certain certificates of the capital stock of the Boston and Albany Railroad Company.

The cases were heard in this court on an agreed statement of facts, the material portions of which appear in the opinion, and a decree was entered in favor of each plaintiff, requiring the defendants to transfer and deliver to them a certificate for thirty-

one and twelve shares, respectively, of the capital stock of the Boston and Albany Railroad Company, and to pay to them the amount of the dividends received by the defendants upon such stock. The defendants, in each case, appealed.

The case was argued at the bar in January, 1897, and afterwards was submitted on briefs to all the justices.

*H. S. Dewey,* for the defendants.

*R. Foster,* for the plaintiffs.

KNOWLTON, J. Each of the plaintiffs is the owner of stock in the Boston and Albany Railroad Company, represented by certificates in the possession of Gray, Dewey, and Company, the defendants. The plaintiff in the first case owned two certificates, — one for nineteen shares, and one for twelve shares, — both of which passed into the hands of the defendants, and were surrendered by them in exchange for a new certificate for thirty-one shares, issued in their own names. The plaintiff in the second case is the owner of one certificate for twelve shares, which the defendants received, and which has not been surrendered. Both of the plaintiffs are minors, and their respective certificates were made in their own names. These certificates were deposited for safekeeping by their mother, who was their guardian, in the Pittsfield National Bank. While the certificates were in the bank, the guardian borrowed money from the bank for her personal use, for which she gave her notes, and at the same time signed upon the back of each of her son's certificates a blank form of transfer, with a signature as follows: "Simon John O'Herron, by Mrs. Catherine O'Herron, Guardian." In like manner on her daughter's certificate, she signed with the signature, "Nora L. O'Herron, by Mrs. Catherine O'Herron, Guardian," and left the certificates as collateral security for the payment of her notes. This transaction occurred on or about December 17, 1889. On or about December 20, 1889, the cashier of the bank, one Francis, who had access to the vault where these certificates were kept, took them, without authority from anybody, and delivered them to the defendants, as security for one of his personal debts. In May, 1890, the guardian paid her notes at the bank. Some time in the year 1891, the defendants took the two certificates standing in the name of Simon John O'Herron to the office of the Boston and Albany Railroad Company, and asked to transfer the stock, and have a new

certificate issued in their own names. The corporation refused to permit a transfer of the stock or the issue of new certificates without a decree of the Probate Court authorizing the sale of the stock. Thereupon the defendants requested Francis to procure such a decree. He then had a petition prepared by the register of the Probate Court for the county of Berkshire, in the name of the guardian, praying for leave to sell and transfer the certificates, and he signed the petition as follows: "Catherine O'Herron, Guardian, by E. S. Francis." On this petition, on July 21, 1891, the Probate Court issued a decree in the usual form, authorizing the guardian to sell or transfer the whole or any part of the stock. All this was done without notice of the petition by publication or otherwise, either to the plaintiffs or to their guardian, and without the knowledge of either of them. The transfer of the stock was then made on the books of the Boston and Albany Railroad Company, and a new certificate for thirty-one shares issued to the defendants. Francis continued to act as cashier of the bank until his death by suicide, on or about July 27, 1893, when his fraudulent conduct was discovered, and his estate was found to be insolvent. He paid the dividends on the stock to the plaintiffs' guardian regularly as long as he lived. At the time of receiving the certificates the defendants supposed that Francis was rightfully in possession of them, and they had no notice of his want of authority to pledge them, except the form of the certificates and of the transfers. The question is whether the defendants acquired a good title to the stock as against the plaintiffs. It is not necessary to consider the original claim of the bank to the stock as security for the loans to the guardian, as the loans were paid. It is clear that the guardian had no right to pledge the stock, and we do not intimate that the bank acquired a valid title to it.

Francis, under whom the defendants derived their title, had no right to the certificates, but held them feloniously. They were the general property of the plaintiffs, and the special property of the bank, which had the possession of them as bailee. The act of Francis in taking them, and pledging them as his own, if not larceny at common law, was at least embezzlement, which by our statute is deemed to be larceny. Pub. Sts. c. 203, §§ 37, 41. A *bona fide* purchaser for value from one who has taken property in such a way, acquires no title to it. The only excep-

tion to this rule is when the property consists of negotiable securities. *Heckle* v. *Lurvey,* 101 Mass. 344, 345. *Spooner* v. *Holmes,* 102 Mass. 503, 507. But certificates of stock, even when indorsed in blank for the purpose ˉof authorizing the making of an instrument of transfer over the signature, are not negotiable securities. This is settled by the highest authority. *Shaw* v. *Spencer,* 100 Mass. 382, 388. *Shaw* v. *Railroad Co.* 101 U. S. 557, 565, 566. *Knox* v. *Eden Musee American Co.* 148 N. Y. 441. *Bangor Electric Light & Power Co.* v. *Robinson,* 52 Fed. Rep. 520. *London & County Banking Co.* v. *London & River Plate Bank,* 20 Q. B. D. 232. It is plain, therefore, that the defendants cannot maintain their claim on the ground that the nature of the property takes it out of the general rule that no title can be acquired from one who has no title.

It is contended that St. 1884, c. 229, is applicable to these cases. If we assume in favor of the defendants that this statute will protect a *bona fide* purchaser or pledgee for value, to whom a certificate of stock has been delivered with a written transfer of it, or a written power of attorney to sell, assign, or transfer it, signed by the owner, it does not help the defendants. The signature on the back of these certificates was not that of the owner, but of a guardian whose trust relation to the property was disclosed on the face of the papers. In their report on the revision of the statutes (1834), the commissioners say, in a note to chapter 79, § 22 (which is section 21 in the final enactment), that they have made the provision as to sales of property by guardians the same as that for trustees appointed under wills. The provision for trustees under wills is found in Rev. Sts. c. 69, § 11, in Gen. Sts. c. 100, § 14, and with certain broader provisions from more recent legislation in Pub. Sts. c. 141, § 20. The provision in regard to guardians is found in Gen. Sts. c. 109, § 22. As a part of the history of the legislation, see also St. 1817, c. 190, § 35, and St. 1820, c. 54, § 3. It is the duty of one purchasing property held by a trustee to ascertain whether the transaction appears to be within the trustee's authority. *Atkinson* v. *Atkinson,* 8 Allen, 15. *Shaw* v. *Spencer,* 100 Mass. 382. *Loring* v. *Salisbury Mills,* 125 Mass. 138. *Smith* v. *Burgess,* 133 Mass. 511. *Loring* v. *Brodie,* 134 Mass. 453. *Colonial Bank* v. *Cady,* 15 App. Cas. 267. *Duncan* v. *Jaudon,* 15 Wall. 165. The statute does not protect the purchaser in a case like the present.

It is contended, further, that the plaintiffs are estopped from reclaiming their property by the negligence of their guardian in leaving their certificates at the bank, indorsed with her signature. The principle which the defendants invoke is not applicable to the facts. Negligence which will work an estoppel of this kind must be a proximate cause of the purchase or advancement of money by the holder of the property, and must enter into the transaction itself. *Swan* v. *North British Australasian Co.* 7 H. & N. 603; *S. C.* 2 H. & C. 175. *Colonial Bank* v. *Cady*, 15 App. Cas. 267, 282. *Baxendale* v. *Bennett*, 3 Q. B. D. 525, 530. *Picker* v. *London & County Banking Co.* 18 Q. B. D. 515. *Knox* v. *Eden Musee American Co.* 148 N. Y. 441. *Arnold* v. *Cheque Bank*, 1 C. P. D. 578, 587, 588. *Scholfield* v. *Londesborough*, [1895] 1 Q. B. 536; *S. C.* [1896] App. Cas. 514. *Telegraph Co.* v. *Davenport*, 97 U. S. 369. *Bangor Electric Light & Power Co.* v. *Robinson*, 52 Fed. Rep. 520. If the negligence is such as might be an appropriate foundation for an action at law to recover damages by one who advances his money, it may be availed of by way of estoppel, to avoid circuity of action. But the facts of this case fall short of showing such negligence. The guardian intrusted the certificates to a national bank of good reputation. Neither she nor anybody else had any reason to anticipate larceny or embezzlement of the property, and a fraudulent use of it, to deceive others, by a trusted officer of the bank. She had no reason to expect that, if the certificates were stolen, anybody would take them without inquiring whether, as trust property, they had been disposed of by the guardian for the benefit of her wards. The conduct of the guardian was not a cause, but a mere condition, of the defendants' advance of money upon the faith of the certificates. A criminal act of Francis intervened as the cause of the defendants' loss, and this the guardian had no reason to anticipate.

When the certificates of stock came into the hands of the defendants, they showed on their face that they had not been assigned or transferred by their owners, but only by one who stood in a relation of trust to the owners. The transfer had not been completed, and the stock still stood in the names of the plaintiffs on the books of the corporation. There was only a signature of the guardian upon each certificate, appended to a

blank which contained nothing to show the nature of the transaction by which it came into the hands of Francis. There was nothing to indicate that the plaintiffs had received value for the stock. Francis, who presented the certificates, was using them solely for his personal benefit. On the face of the paper there was notice to the defendants that they were trust property while in the hands of the guardian. The defendants were put upon inquiry, and they had no right to receive them as a pledge for Francis's debt, without at least having information of facts which would warrant them in believing that the plaintiffs' interests had been protected in the transaction by which they came into the hands of Francis. Apparently they made no inquiry, but took them as they were, knowing that the plaintiffs were to receive nothing from the disposition which Francis then made of them. We are of opinion that there is no principle of estoppel that can be invoked in favor of the defendants to deprive the plaintiffs of their property.

The decree of the Probate Court does not give effect to the claim of the defendants. It was not made until long after the transfer to them. It purported to authorize a sale of the stock, and not a pledge of it, much less a pledge of it for the benefit of others than the plaintiffs. But, above all, the Probate Court acquired no jurisdiction of the case as against the plaintiffs. No case nor any proper party was ever before the court in regard to the sale of the stock. The unauthorized signature and appearance of Francis availed nothing as against the plaintiffs or their guardian. *Jochumsen* v. *Suffolk Savings Bank*, 3 Allen, 87. *Scott* v. *McNeal*, 154 U. S. 34, 46.

The fact that the Pittsfield National Bank is paying the expenses of the plaintiffs' litigation is immaterial. The plaintiffs are proceeding in their own rights and on their own equities. They may elect to proceed to recover back their stock, even though they might have a different kind of remedy against the bank. There is nothing in law or in equity to forbid their acceptance of such aid in the litigation as the bank may, for its own interest, choose to render them. There is no privity between the bank and the defendants. The act of Francis by which the defendants obtained their possession was a wrong against the bank and the plaintiffs, as well as against the defendants.

*Decree in each case affirmed.*