THOMAS J. SCOLLANS *vs.* E. H. ROLLINS AND SONS.

SAME *vs.* SAME.

Suffolk.    November 16, 17, 1898. — May 17, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, LATHROP,
BARKER, & HAMMOND, JJ.

*Bond — Negotiability — Remedy of rightful Owner after Embezzlement and
Pledge of Bond by Depositary — Estoppel — Negligence.*

A document not under seal, bearing on its face the words "Registered Bond,"
stating that there will be due from the obligor, a municipal corporation, to a
payee therein named, a sum certain on a day certain, with interest, and that it
is transferable only at the office of the city treasurer, whether technically a
bond or a promissory note, is not negotiable; and, having been delivered by the
payee in payment of a debt, with a stamped writing upon its reverse side,
signed and acknowledged by the payee, stating that "Value received, I assign
. . . the within certificate of the city of Boston stock, and hereby authorize the
transfer thereof on the books of the city treasury," an action for its conversion
may be maintained by the transferee against a person who purchased it from a
bank to which it had been fraudulently pledged by a depositary of the trans-
feree; and the transferee is not estopped from asserting his ownership, or guilty
of negligence by reason of intrusting the bond, enclosed in an envelope marked
with his name and sealed, to his broker as a depositary for safe keeping, or in
not withdrawing it when he found that he had been credited with the amount
of the bond in his account with his broker, and was falsely informed that it was
still in the safe.

TWO ACTIONS OF TORT, for the conversion by the defendant,
a corporation, of two bonds of the city of Boston. Trial in the
Superior Court, before *Maynard*, J., who allowed a bill of excep-
tions, in substance as follows.

The plaintiff in opening his case to the jury stated that, in
August, 1896, the bonds alleged to have been converted were
delivered to him in payment of a debt by William Scollans, the
original payee thereof, who at the same time signed and acknowl-
edged before a justice of the peace instruments of assignment
stamped by a rubber stamp on the reverse side of the bonds,
but not containing the name of any person as assignee. The
plaintiff then obtained permission of one Gage, a member of a
firm of bankers and brokers, in whose office he occupied desk
room and of whom he was a customer, to leave the bonds in
the firm's safe for safe keeping. The bonds were placed by

Gage, in the plaintiff's presence, in an envelope which was marked in Gage's handwriting, " T. J. Scollans, Private Property," was sealed by him and placed in the safe where it was seen by the clerks during September and October. Subsequently, Gage, without the knowledge of the plaintiff, pledged them to a bank as security for a loan obtained by his firm, and upon the insolvency of the firm, in November or December, 1896, the bank sold them at public auction to the defendant, who purchased them in good faith and for value, filled in with its name the blank in each indorsement, presented the bonds to the city auditor for cancellation, and received in return new certificates payable to itself. In September, 1896, Gage handed to the plaintiff the regular monthly statement of his account, showing stocks bought and sold and carried for him in August, and giving him credit for the two city of Boston bonds. The plaintiff immediately called Gage's attention to the fact that these bonds were not given as collateral, and protested against their being so regarded. Gage replied that he did not mean to have them so regarded, that they were still in the safe, but as the plaintiff had taken no receipt for them it would be found beneficial " if anything should happen to either " of them to have some record of the fact that the plaintiff owned them. This statement appeared to be satisfactory to the plaintiff, who trusted to the honesty and integrity of Gage, and who made no objection to their being credited in the same manner on the October statement of his account.

The following is a copy of the bonds, and of the assignment and acknowledgment on the reverse side:

" Registered Bond. City of Boston. This is to certify that for value received there will be due from the City of Boston, payable at the office of the City Treasurer on the first day of April, 1913, to William Scollans the sum of One Thousand Dollars with interest at the rate of four per cent per annum payable on the first day of April and October in each year.

" This obligation being created in pursuance of an order of the City Council passed the tenth day of July, eighteen hundred and ninety-three.

" Transferable only at the office of the City Treasurer. Interest beginning September 7, 1893."

Reverse Side.

" Value received, I assign E. H. Rollins & Sons the within certificate of the City of Boston Stock, and hereby authorize the transfer thereof on the books of the City Treasury.  William Scollans.

" State of Massachusetts, County of Suffolk, ss.

" Personally appeared before me the above named William Scollans and acknowledged the foregoing to be his free act and deed.  Witness my hand and official signature this 13th day of August, 1896."  (Signed by a justice of the peace.)

At the conclusion of the plaintiff's opening the judge, at the request of the defendant, and, after a negative reply by the plaintiff to his inquiry whether the plaintiff had any further proof than had been outlined to the jury, directed the jury to return a verdict for the defendant in each case, and the plaintiff alleged exceptions.

The case was argued at the bar in November, 1898, and afterwards was submitted on briefs to all the justices except *Field,* C. J.

*J. E. Hannigan,* for the plaintiff.

*R. F. Sturgis,* for the defendant.

BARKER, J.  The documents for the conversion of which these actions are brought are described in the bill of exceptions and in the several declarations as bonds of the city of Boston.  Although upon inspection of the copy of the bonds, which are a part of the bill of exceptions, they bear upon their faces the words " Registered Bond," they do not appear to have been under seal.  Each document certifies that there will be due from the city, payable at the office of the city treasurer on the first day of April, 1913, to William Scollans, the sum of one thousand dollars with interest at four per cent per annum, payable on the first day of April and October in each year.  Each also bears upon its face a statement that it is transferable only at the office of the city treasurer.  From this it results that, whether technically bonds or promissory notes, the documents were not negotiable paper, and could not be made negotiable paper by any act or indorsement of William Scollans the payee.  When, intending to part with the property in the documents and in the rights of which they were the evidence, William Scollans delivered them to the plaintiff in payment of a debt,

the property in the documents and in the rights passed to the plaintiff. When so delivered to the plaintiff each document bore upon its reverse side a stamped writing signed by William Scollans, and acknowledged by him before a justice of the peace to be his free act and deed. This stamped writing was of the following tenor: "Value received, I assign . . . the within certificate of the city of Boston stock, and hereby authorize the transfer thereof on the books of the city treasury." These indorsements neither made nor purported to make the documents negotiable securities, within the meaning of the law merchant. The documents remained in the same condition when they were stolen or feloniously embezzled by a person, to whom the plaintiff had intrusted them for safe keeping, and when they were pledged by him to a bank, and when they were sold at auction by that bank to the defendant, who thereupon filled in with its corporate name the blank in each indorsement, and presented the documents to the city auditor for cancellation, and received in return new certificates payable to the defendant.

Under our decisions the property of the true owner of documents of the nature of those now in question is not devested by a sale to a purchaser, in good faith and for value, from one who has got them feloniously from the true owner, nor by any subsequent dealing of such a purchaser with the documents, but the property remains with the true owner from whom they were feloniously taken. The real ownership in such documents follows the general rule as to the ownership of chattels, the only exception to which is as to property which consists of the currency of the country or securities which by the law merchant are negotiable. *O'Herron* v. *Gray*, 168 Mass. 573, 575. See also *Dame* v. *Baldwin*, 8 Mass. 518; *Jarvis* v. *Rogers*, 13 Mass. 105; 15 Mass. 389; *Mason* v. *Waite*, 17 Mass. 560; *Wheeler* v. *Guild*, 20 Pick. 545; *Stanley* v. *Gaylord*, 1 Cush. 536; *Worcester County Bank* v. *Dorchester & Milton Bank*, 10 Cush. 488; *Riley* v. *Boston Water Power Co*. 11 Cush. 11; *Wyer* v. *Dorchester & Milton Bank*, 11 Cush. 51; *Chapman* v. *Cole*, 12 Gray, 141; *Gilmore* v. *Newton*, 9 Allen, 171; *Heckle* v. *Lurvey*, 101 Mass. 344; *Spooner* v. *Holmes*, 102 Mass. 503; *Hinckley* v. *Union Pacific Railroad*, 129 Mass. 52; *McCann* v. *Randall*, 147 Mass. 81,

94.   See also *London Joint Stock Bank* v. *Simmons*, [1892] A. C. 201, 215; *Colonial Bank* v. *Cady*, 15 App. Cas. 267; *Earl of Sheffield* v. *London Joint Stock Bank*, 13 App. Cas. 333; *London & County Banking Co.* v. *London & River Plate Bank*, 20 Q. B. D. 232; *Cole* v. *Northwestern Bank*, 10 C. P. 354; *Crouch* v. *Credit Foncier of England*, L. R. 8 Q. B. 374; *Shaw* v. *Railroad Co.* 101 U. S. 557; *Knox* v. *Eden Musée Americain Co.* 148 N. Y. 441; *Barstow* v. *Savage Mining Co.* 64 Cal. 388; *Bangor Electric Light & Power Co.* v. *Robinson*, 52 Fed. Rep. 520.

As the plaintiff is yet the true owner of the documents which the defendant has surrendered for cancellation, and for which it has in return received new certificates payable to itself, the defendant cannot sustain the verdicts which were ordered in its favor, except by showing that the evidence offered would, as matter of law, show that the plaintiff is estopped from setting up his true ownership as against it.   Such an estoppel must bear looking at from two sides.   The indorsements upon the documents, when the defendant took them, contained a blank the presence of which made it uncertain whether the payee had parted with his title.   The presence of the blanks informed the defendant that the instruments passed to it must be other than they then were to give the defendant a right to surrender them for cancellation, and to receive new certificates in exchange.   Such blank transfers are consistent with the continued ownership of the person who has executed them, and are also consistent with the ownership of some other person than the bearer, and where they do not purport in terms to confer ownership upon the bearer, the most which can be predicated of them, in the absence of evidence of custom or usage, is that they are made in aid of the true title, and not to defeat it, and that they are to be used only to help the true owner in procuring for himself the right of registration and the other rights of which the documents so indorsed are the evidence.   See *France* v. *Clark*, 26 Ch. D. 257.   There was no evidence in the present case that such certificates with blank assignments pass in fact from hand to hand like negotiable instruments without inquiry as to the right of the bearer to dispose of them.   Without such evidence, we cannot assume that these documents were " in order " so as to make the act of

taking them without inquiry as to how the title originally in the payee had come down to the bank of which the defendant bought " the act of a reasonable man reasonably dealing with matters of business." See *Williams* v. *Colonial Bank*, 38 Ch. D. 388, 401, and *Colonial Bank* v. *Cady*, 15 App. Cas. 267, 278. Unless it is the custom to regard such documents so indorsed as equivalent to securities to bearer, the blanks should have put the defendants upon inquiry, and they would not be in a position to contend that the true owner is estopped from asserting his title.

Again, examining this contention of title by estoppel in the light of the plaintiff's own conduct, we are of opinion that it cannot be said as matter of law upon the evidence that his conduct has been such as to prevent him from asserting his title against any one. The plaintiff has neither himself made, nor knowingly allowed to be made, any representation that the bearer of these documents with their assignments could transfer the property in them. If the possession of the certificates by the bank with the blank assignments indorsed enabled the bank of which the defendant bought to make in substance such a representation to the defendant, the giving of that possession was not the act of the plaintiff, and was possible only because of the commission of a felony against him of which he was not cognizant and for which he was not responsible. The only other possible ground for an estoppel is negligence. While the plaintiff intrusted these documents to persons whose business it was, as bankers and brokers, to sell securities, he did not intrust them to the depositary for sale or to pledge, but simply for safe keeping ; and he had good reason to suppose that the documents remained in a safe in an envelope marked with his own name, and sealed. The fact that the custodians of his securities were bankers and brokers, he not intrusting the securities to them in that capacity, did not make him responsible for an unauthorized sale, possible only through the commission of a felony. See *Cole* v. *Northwestern Bank*, 10 C. P. 354, 369 ; *Wood v. Rowcliffe*, 6 Hare, 183 ; *Lamb* v. *Attenborough*, 1 B. & S. 831 ; *Heyman* v. *Flewker*, 13 C. B. (N. S.) 519 ; *Jenkyns* v. *Usborne*, 7 M. & G. 678 ; *M'Ewan* v. *Smith*, 2 H. L. Cas. 309 ; *Kingsford* v. *Merry*, 1 H. & N. 503 ; *Hardman* v. *Booth*, 1 H. & C. 803. If there-

fore he was negligent, either in intrusting the certificates to his depositaries for safe keeping, or in not withdrawing them when he found that he had been credited with the certificates in account, and was falsely informed that they were still in the safe, or in continuing to trust to the honesty and integrity of his depositary, that negligence would seem not to have entered into the transaction by which the defendant bought and paid for the certificates, and not to have been a proximate cause of their purchase.  See *O'Herron* v. *Gray*, 168 Mass. 573, 577, and cases cited.  See also *Greenfield Savings Bank* v. *Stowell*, 123 Mass. 196 ; *White* v. *Duggan*, 140 Mass. 18, 20 ; *Shepard & Morse Lumber Co.* v. *Eldridge*, 171 Mass. 516.  However this may be, we are of opinion that it cannot be held, as matter of law, that the plaintiff upon the evidence offered was guilty of negligence.  He had at least the right to have that question passed upon by a jury.                    *Exceptions sustained.*