## M. REINHARD SCHUMACHER v. GREENE CANANEA COPPER COMPANY and Others.[1]

February 9, 1912.

Nos. 17,396—(216).

**Pledge of stock certificate.**

When a stock certificate is pledged with a bank, the act of an officer thereof in wrongfully appropriating the same for his own purposes is not the misappropriation of the bank to whose custody it was intrusted, even though the bank may be liable to the pledgor.

**Same — right of owner against purchaser for value.**

The owner of a stock certificate indorsed in blank, who in pledging the same to a reputable going bank is free from negligence, is not estopped from asserting title thereto as against an innocent good-faith purchaser for value, who derives title through one who stole such certificate from the bank while it was pledged, even though the thief be the cashier of the bank.

**Custom of brokers.**

A custom prevailing among brokers and bankers to pass stock certificates indorsed in blank from hand to hand without inquiry as to source of title, the same as negotiable paper, does not override the established law that stock certificates have not all the attributes of negotiable instruments; nor does such custom warrant the court in changing the law to conform to the custom.

[1] Reported in 134 N. W. 510.

Action in the district court for St. Louis county against Greene Cananea Copper Company, the City Trust Company, the individual partners constituting the firm of Hamlin, Nickerson & Company, J. Thomas Reinhardt and Philip Tillinghast, as receiver of the First National Bank of Ironwood, Michigan, to determine that plaintiff was the sole owner of certain shares of stock in defendant mining company and of a certain certificate of stock, and to enjoin defendants Hamlin, Nickerson & Company and defendant Reinhardt from asserting any claim thereto.

The answer of Greene Cananea Copper Company and City Trust Company admitted that on or about July 10, 1909, plaintiff notified defendant copper company that he was the sole owner of the certificate of stock and of the alleged theft thereof, and demanded that the copper company refuse to transfer said certificate; alleged that on October 21, 1909, the certificate had been presented to these defendants for transfer by defendants Hamlin, Nickerson & Company and that thereupon, by reason of the notice theretofore received from plaintiff, defendant copper company refused to make the transfer; that defendants Hamlin, Nickerson & Company and Reinhardt claimed and still claim that they own the stock and certificate evidencing the same; admitted that the certificate had been in their possession and control ever since October 21, 1909; alleged that they were unable to determine which of the parties were the rightful owners of the stock, but that defendant copper company always had been and was willing to have the certificate of stock transferred to such person of the adverse claimants as the court should determine was the rightful owner. The answer of the partners constituting the firm of Hamlin, Nickerson & Company alleged that in making the purchase of the stock they acted in the utmost good faith in the belief they were dealing with the full equitable and legal owner, and they never dealt with the Larson referred to in the complaint.

The reply admitted the certificate was presented to the City Trust Company for transfer; that it took the certificate, but refused to issue a new certificate or to return the old certificate.

The case was tried before Dibell, J., who made findings and as

conclusions of law found that plaintiff was the owner of the one hundred shares of stock of defendant Greene Cananea Copper Company evidenced by stock certificate numbered A 4708, and that none of the defendants had any interest therein; that defendant Greene Cananea Copper Company deliver the certificate of stock to plaintiff and transfer the same on its books, in such manner as he may direct. From an order denying their motion to amend the findings of fact and conclusions of law or for a new trial, defendants B. Nason Hamlin, William G. Nickerson and Alfred Codman appealed. Affirmed.

*Wilson G. Crosby* and *Oliver S. Andresen,* for appellants.

*Haroldson & Colton* and *Herb M. Norris,* for respondent.

HOLT, J.

This action was brought to determine the ownership of shares of stock in the defendant Greene Cananea Copper Company, a corporation of this state. The defendants Hamlin, Nickerson & Company claimed the share certificate evidencing the stock, and denied plaintiff's right thereto. The trial resulted in findings of fact and conclusions of law in favor of plaintiff. Hamlin, Nickerson & Company moved the court for amended findings, and, in case of a denial of such motion, for a new trial. An order denying both motions was made. From the order this appeal was taken.

The facts in the main are these: On May 12, 1909, plaintiff held and owned a share certificate in the Greene Cananea Copper Company, issued in his name and bearing the number A4708. He then borrowed from the First National Bank of Ironwood, Michigan, $700, giving his promissory note, due in four months, to the bank, and as security pledging the certificate in suit and two similar certificates in other corporations. When so pledged, the certificates were indorsed in blank by plaintiff and attached to the note. The note described the certificates pledged, and authorized the president or cashier of the bank, in case of default, to sell and apply the proceeds to the payment of the note. Elvin T. Larson was then cashier of the bank and managed its business, assisted by the other officers thereof.

May 17, 1909, Larson took the note and certificates from the bank, detached the certificate in question, and gave it, together with many other stock certificates, to a broker to sell. This certificate and others were sold by the broker to Miller & Company, of New York. The broker drew a draft for the price on that firm, payable to his own order, indorsed and delivered the draft to Larson, who thereto attached the certificates sold, and forwarded the same to a Duluth bank for collection, with instruction to credit the amount to the First National Bank of Ironwood. The stock certificates thus turned over to the broker by Larson, and sold, realized $20,081.74. June 21, 1909, the First National Bank of Ironwood was placed in the hands of a receiver.

Plaintiff did not discover that the pledged certificates had passed out of the possession of the pledgee till July 1, 1909, and on the ninth day of that month he notified the Greene Cananea Copper Company and its transfer agent in New York City of the loss. Thereafter plaintiff tendered payment of the note to the receiver of the bank at the proper time and demanded the return of the certificates pledged; but the receiver had neither note nor certificates under his control. The defendants Hamlin, Nickerson & Company, without notice of plaintiff's rights, bought in open market the certificate involved in this suit, in good faith, and at full market price.

The court also found that the cashier, Larson, stole this certificate from the bank, and that plaintiff's act in pledging it with the bank, indorsed in blank, was not negligence, nor was he negligent after discovering its loss. And the court refused to find, as requested by appellants, that the disposal of the certificate was the unauthorized act of the bank itself, or that plaintiff was estopped from asserting title to the certificate.

If the sale of this certificate of stock was the act of the bank, the appellants should prevail; for the weight of authority is that where, by a wrongful or unauthorized act, two innocent persons have been placed in a situation where a loss must be borne by one of them, it falls on the one who first trusted the wrongdoer and put in his hands the means of inflicting the loss. Scollans v. Rollins, 179 Mass. 346,

60 N. E. 983, 88 Am. St. 386; East Birmingham v. Dennis, 85 Ala. 565, 5 South. 317, 2 L.R.A. 836, 7 Am. St. 73. But the court found that the act of abstracting and selling the certificate was not the act of the pledgee bank, but of one of its officers, for a purpose personal to him. In our opinion this finding is abundantly supported.

Larson, prior to May 17, 1909, was a defaulter. He had depleted the funds of the bank by stealing or embezzling large amounts. In an attempt to hide or cover these defalcations, during an expected visit of the bank examiner, these stock certificates were purloined and disposed of by Larson, and the proceeds turned into the bank's funds. The note of plaintiff was not in the bank, but was found at the office of another concern managed by Larson. The broker did not have the transaction in regard to the sale of the certificates at the bank, and did not understand that he acted for the bank. The circumstance that Larson had previously stolen large amounts from the bank, and by the theft of this certificate and a large number of others obtained funds which he caused to be turned over to the bank to cover up the prior thefts, does not change the nature of his last offense. Plaintiff dealt with the bank, not with Larson. He intrusted the certificate to the possession of the bank. He authorized no one but the bank to sell or deliver it on any condition. There is no evidence that the bank would have been in need of funds, but for Larson's thefts and defalcation.

The chief contention of appellants is that plaintiff, by pledging the certificate, indorsed in blank, and by the authority given in the note to the cashier to sell in case of default, is now estopped from asserting title as against an innocent good-faith purchaser for value. The only act of plaintiff upon which appellants may claim that they relied in making the purchase is the blank indorsement of the certificate. But the law is that the blank indorsement on a share certificate of stock does not, in itself, estop an owner from claiming it, in a case where it has been stolen from him and has passed into the hands of an innocent holder for value. A certificate representing shares of stock is not negotiable paper in the sense that the title transferred

by a thief to an innocent good-faith holder cannot be questioned. This is conceded to be the law in the cases relied on by appellant. Shattuck v. American, 205 Pa. St. 197, 54 Atl. 785, 97 Am. St. 735; Beckwith v. Galice, 50 Ore. 542, 93 Pac. 453, 16 L.R.A.(N.S.) 723. See also Barstow v. Savage, 64 Cal. 388, 1 Pac. 349, 49 Am. Rep. 705; O'Herron v. Gray, 168 Mass. 573, 47 N. E. 429, 40 L.R.A. 498, 60 Am. St. 411; Knox v. Eden Musée, 148 N. Y. 441, 42 N. E. 988, 31 L.R.A. 779, 51 Am. St. 700.

In the present case it is found that, in pledging the certificate indorsed in blank with the bank, plaintiff was not negligent; hence no estoppel on that ground. The finding cannot well be challenged. The bank was a national bank in good standing. Pledging stock certificates as security for loans at banks is so common and extensive in the business world that no one questions the care and prudence of the one who thus trusts the possession of his property to a going bank. In order to make such a pledge available, it is customary, and perhaps necessary, to have certificates indorsed. But it is claimed that by pledging the certificate plaintiff intrusted its possession to the officers of the bank, because the bank could exercise control over the property only through its officers or servants. Therefore, having placed the certificate in the bank, where, of course, its cashier had access to it, the contention is plaintiff trusted to his honesty, and, the cashier having abused this confidence, plaintiff, and not appellants, must bear the loss.

We are cited to no case which holds that, where property of this kind has been intrusted to a corporation for safe keeping, theft thereof by any of its officers or servants will estop the owner from asserting title thereto as against the title derived through the thief by an innocent good-faith purchaser for value. We have already adverted to the fact that plaintiff dealt with and trusted the bank—not any of its officers.· And it would seem a reasonable view that, unless the disposition of such property be the act of the corporation, the officer or agent concerned in such disposition may be regarded as an intermeddler and outsider.

We do not consider that the legal principles announced in the

117 M.—9.

cases relied on by appellants, as applied to the facts therein, require a holding that plaintiff is estopped in the case at bar from claiming the certificate.

O'Neil v. Wolcott Mining Co., 174 Fed. 527, 98 C. C. A. 309, 27 L.R.A.(N.S.) 200, was a case where a corporation refused to transfer stock upon the claim of Wolcott that thirteen years before he had lost it.    The evidence did not tend to show that the certificates of shares plaintiff had bought were the ones Wolcott lost, or that he had lost any.

In Beckwith v. Galice, supra, Beckwith was induced by the deception of one Levy to intrust the possession of stock certificates to a fictitious bank organzied by Levy and others for fraudulent purposes, and the decision was placed on the ground that Beckwith intended to give the so-called bank power to dispose of the certificates; hence possession of the certificates was obtained by fraud, and not by common-law theft, and Beckwith was estopped.

In Shattuck v. American, Shattuck left the certificates of stock in the safe of his clients, a partnership of stockbrokers.   One of the partners abstracted and pledged the certificates, and it was held Shattuck was estopped, because, "where one, by his own act, arms another with power to act for him, he who so armed the wrongdoer must suffer for the consequences of the wrongdoing."

We may add to the authorities already cited, which all appear to sustain plaintiff's position, Hall v. Wagner, 111 App. Div. 70, 97 N. Y. Supp. 570, and Farmers v. Diebold, 66 Oh. St. 367, 64 N. E. 518, 58 L.R.A. 620, 90 Am. St. 586.

We are also invited to hold, in effect, that share certificates of stock are negotiable instruments, and hence an innocent good-faith purchaser for value takes title as against the true owner, who has been deprived of possession by theft, because it is claimed that there was proven a custom among banks and brokers for certificates of stock with the transfer on the back indorsed in blank to pass from hand to hand without inquiry, the same as negotiable paper.   A custom which runs counter to the settled and established law is not to be adopted by the courts.   If a crying demand exists in the business

world to have certificates of shares in corporations placed on a parity with negotiable paper in every respect, it is a proper matter for legislative investigation and action.

We are of the opinion that the trial court made proper findings, and that there was no error in refusing the motion for amended findings, or in denying a new trial.

The order is affirmed.

PHILIP E. BROWN, J., being absent on account of illness, took no part.