JACKSON *v.* PEERLESS PORTLAND CEMENT CO.

CORPORATIONS — TRANSFER OF STOCK INDORSED IN BLANK—GOOD-FAITH PURCHASER PROTECTED IN PURCHASE OF STOCK INDORSED IN BLANK—LARCENY.

    In view of the provisions of the uniform stock transfer act (3 Comp. Laws 1915, § 11920 *et seq.*), where a stranger, by means of false representations, induced the owner of corporate stock to indorse it in blank and deliver it to him and he sold it to a good-faith purchaser, the latter is entitled to retain it, although, under 3 Comp. Laws 1915, § 15319, the false representations by which it was obtained amounted to larceny. BIRD and SNOW, JJ., dissenting.

Appeal from Branch; Johnson (Clayton C.), J.

Corporations, 14 C. J. §§ 721, 1186; 29 L. R. A. (N. S.) 254; 7 R. C. L. 214.

Submitted June 15, 1926.    (Docket No. 102.)    Decided May 3, 1927.

Bill by Ella D. Jackson against the Peerless Portland Cement Company and William H. Rose & Company to establish ownership in shares of corporate stock, and for an injunction.    From a decree dismissing the bill, plaintiff appeals.    Affirmed.

*Palmer, Palmer & Palmer,* for plaintiff.

*Stanley E. Weage* (*P. J. M. Hally, Jr.,* of counsel), for defendant William H. Rose & Co.

BIRD, J. (*dissenting*).    Plaintiff is an elderly lady who lives alone on a farm in Branch county.    She was the owner of 200 shares of stock of the Peerless Portland Cement Company.    On a September day in 1925 a stranger called on her and represented himself to be an agent of the Peerless Portland Cement Company.    He showed her a forged telegram which purported to have been sent to him by the secretary of the cement company, ordering him to take up her stock.    He also exhibited to her a forged letter which purported to have been written by the secretary of the company, directing him to take up the stock, and stating the company would send her $4,500 within a few days, explaining that the company was redeeming its stock, as it had a right to do.    Plaintiff informed the stranger that in business matters of this nature she usually consulted her brother-in-law, Mr. Tomlinson, of Colon, and that she would take the matter up with him.    The stranger replied that her brother-in-law, Mr. Tomlinson, had already sent in his stock. After some further talk by way of inducement, plaintiff indorsed the certificates in blank and passed them over to him to be delivered to the cement company. The stranger took the stock to Detroit and sold it to William H. Rose & Company, a brokerage firm, who

claims that it purchased the stock for value and without knowledge of any infirmity. Plaintiff thereupon notified the company of her loss and filed her bill stating the facts and praying for a decree which would make her sole owner of the certificates, and would compel William H. Rose & Company to deliver the certificates to her, with a further prayer for an injunction. It was the opinion of the trial court that, inasmuch as the plaintiff indorsed the certificates in blank and placed them in the hands of a stranger, and the defendant brokerage house having purchased them from the stranger, who was the apparent owner, for value and without knowledge of the infirmity, it thereby became a *bona fide* holder for value.

If the stranger obtained the certificates of stock in the manner indicated by the plaintiff, he was guilty of larceny (3 Comp. Laws 1915, § 15319). The statute provides:

"Every person who shall falsely personate or represent another, and in such assumed character shall receive any money, or other property whatever, intended to be delivered to the party so personated, with intent to convert the same to his own use, shall be deemed, by so doing, to have committed the crime of larceny."

If the stranger were guilty of larceny he would have no title to the certificates, and, therefore, could give none to William H. Rose & Company, as will be shown by the following authorities:

"Share certificates not being negotiable instruments, if such a certificate is lost or stolen from the owner, without fault on his part, his right to it is superior to that of any person who may acquire it by purchase for value from any other holder; and he may maintain, against the corporation and the person who sold the stolen scrip, an action to establish his right to it." 10 Cyc. p. 619.

"Stock certificates are assignable, and pass by in-

dorsement or delivery as bills of exchange and promissory notes pass, but a majority of the courts have declared that they are not negotiable instruments, notwithstanding a custom or usage among stock brokers to the contrary; and an innocent purchaser for value of such certificate, although indorsed in blank by the owner, is deemed to obtain no better title to the stock than his vendor had."   7 R. C. L. p. 213.

"One of the most important elements of the negotiability of promissory notes is that, if the holder of such note loses it or it is stolen from him when it is indorsed in blank, a subsequent *bona fide* purchaser of such note is protected as against the person who loses it.   A different rule seems to prevail as regards certificates of stock indorsed in blank and then lost or stolen.   In this respect certificates of stock are not negotiable.   It has been clearly held that a purchaser from a thief of certificates of stock indorsed in blank is not protected, nor is any subsequent purchaser of that identical certificate allowed to claim the stock." 1 Cook on Corporations (3d Ed.), § 368.

"The rule as to the rights of a *bona fide* holder in respect to paper which has been lost or stolen does not extend to cases where the paper is nonnegotiable. So it has been decided that a certificate of stock is not negotiable and that a purchaser of such a certificate acquires no rights thereto where it was stolen without fault or negligence of the owner, though it was regularly indorsed."   1 Joyce on Defenses to Commercial Paper (2d Ed.), § 592.

In *O'Herron* v. *Gray*, 168 Mass. 573 (47 N. E. 429, 40 L. R. A. 498, 60 Am. St. Rep. 411), it is stated that:

"Francis, under whom the defendants derived their title, had no right to the certificates, but held them feloniously.   They were the general property of the plaintiffs, and the special property of the bank, which had possession of them as bailee.   The act of Francis in taking them, and pledging them as his own, if not larceny at common law, was at least embezzlement, which by our statute is deemed to be larceny.   *   *   *   A *bona fide* purchaser for value

from one who has taken property in such a way acquires no title to it."

In *Schumacher* v. *Greene-Cananea Copper Co.*, 117 Minn. 124 (134 N. W. 510, 38 L. R. A. [N. S.] 180, Ann. Cas. 1913C, 1115), the question whether a certificate of stock was negotiable and whether an innocent purchaser from a thief had superior title were discussed. In the course of the opinion it was said:

"The only act of plaintiff upon which appellants may claim that they relied in making the purchase is the blank indorsement of the certificate. But the law is that the blank indorsement on a share certificate of stock does not, in itself, estop an owner from claiming it, in a case where it has been stolen from him and has passed into the hands of an innocent holder for value. A certificate representing shares of stock is not negotiable paper in the sense that the title transferred by a thief to an innocent good-faith holder cannot be questioned. * * * We are also invited to hold in effect that share certificates of stock are negotiable instruments, and hence an innocent good-faith purchaser for value takes title as against the true owner, who has been deprived of possession by theft, because it is claimed that there was proven a custom among banks and brokers for certificates of stock with transfer on the back indorsed in blank to pass from hand to hand without inquiry, the same as negotiable paper. A custom which runs counter to the settled and established law is not to be adopted by the courts."

See, also, Brannan's Negotiable Instruments Law (4th Ed.), p. 11; Jones on Collateral Securities (3d Ed.), § 461; *Swim* v. *Wilson*, 90 Cal. 126 (27 Pac. 33, 13 L. R. A. 605, 25 Am. St. Rep. 110); *O'Herron* v. *Gray, supra; People* v. *Martin*, 116 Mich. 446; *Millard* v. *Green*, 94 Conn. 597 (110 Atl. 177, 9 A. L. R. 1610); *Bangor Electric Light & Power Co.* v. *Robinson*, 52 Fed. 520; *East Birmingham Land Co.* v. *Dennis*, 85 Ala. 565 (5 South. 317, 2 L. R. A. 836, 7 Am. St. Rep. 73); *Perkins* v. *Cowles*, 157 Cal. 625

(108 Pac. 711, 30 L. R. A. [N. S.] 283, 137 Am. St. Rep. 158) ; *Clark* v. *American Coal Co.*, 86 Iowa, 436 (53 N. W. 291, 17 L. R. A. 557) ; *Farmers' Bank* v. *Diebold Safe & Lock Co.*, 66 Ohio St. 367 (64 N. E. 518, 58 L. R. A. 620, 90 Am. St. Rep. 586) ; *Scollans* v. *Rollins*, 173 Mass. 275 (53 N. E. 863, 73 Am. St. Rep. 284) ; *Schumacher* v. *Greene-Cananea Copper Co.*, *supra*. (See extensive note to this case in Ann. Cas. 1913C, 1117.)

*Union Trust Co.* v. *Oliver*, 214 N. Y. 517 (108 N. E. 809), is cited by the dissenting opinion as sustaining its view. That case is not in point for the reason that the acts of Clarke who wrongfully used the certificates as collateral did not constitute larceny. It is quite likely that New York does not have the statute which we have.

The case of the *City of Adrian* v. *National Bank*, 180 Mich. 171 (Ann. Cas. 1916A, 600), which held that a bond was a negotiable security, is cited to show that a certificate of stock is likewise a negotiable security. A negotiable instrument is an unconditional promise or order to pay a certain sum of money at a fixed time (2 Comp. Laws 1915, § 6042). Why compare a certificate of stock to a money bond? One is a promise to pay a certain sum of money on a given date, the other a certificate that John Doe owns a certain interest in a particular corporation. I am not aware of any negotiable instrument which does not promise to pay money.

Defendant's counsel attempts to bring the case within the uniform stock transfer act (3 Comp. Laws 1915, § 11920 *et seq.*). We do not think that this transaction comes within the uniform stock transfer act. The error of defendant's counsel lies in the fact that they proceed upon the theory that full negotiability has been conferred by the uniform stock transfer act on stock certificates. An examination of that act

will disclose that only partial negotiability has been given to them, and the statute points out definitely how far it has gone in that direction.    There appears to be no provision in the act to cover a case where the shares have been taken feloniously, therefore we must conclude that the legislature did not intend to make the act applicable to cases of larceny of shares of stock, but left that question to be dealt with under the following section:

"In any case not provided for by this act, the rules of law and equity, including the law merchant, and in particular the rules relating to the law of principal and agent, executors, administrators, and trustees, and to the effect of fraud, misrepresentation, duress or coercion, mistake, bankruptcy or other invalidating cause, shall govern."    3 Comp. Laws 1915, § 11937.

The case of larceny of stock certificates is nowhere mentioned in the stock transfer act, therefore it is fair to assume that it is "a case not provided for by this act" but clearly comes within the words of the section quoted "or other invalidating cause."

It has always been held in our law that the purchaser of stock certificates obtained by larceny got no title thereto.    Our statute (§ 15319) makes the acts and representations by which the stranger in this case obtained these stock certificates larceny.    States which do not have this statute might not hold the acts and representations larceny, as they did not constitute larceny at the common law, but our statute declares the representations that the stranger made use of to be larceny.    In view of this the rule should be applied.    Inasmuch as the stranger was guilty of larceny, he had no title to the certificates, therefore could confer none on defendant William H. Rose & Company.

The decree should be reversed and the prayer of the plaintiff should be granted, giving her the absolute title to the certificates and entitling her to the posses-

sion thereof.    The plaintiff should recover her costs of both courts.

SNOW, J., concurred with BIRD, J.

WIEST, J.    I am not content with the opinion of Justice Bird.    My views are expressed in *Peckinpaugh* v. *H. W. Noble & Co., ante,* 464.    I only care to supplement what I there said by the following quotation from *Union Trust Co.* v. *Oliver,* 214 N. Y. 517 (108 N. E. 809):

"While certificates of corporate stock lack some of the attributes of commercial paper and are, therefore, sometimes denominated only *quasi* negotiable, yet parties who deal in them innocently have long been protected by the law upon an analogous principle. *Jarvis* v. *Manhattan Beach Co.,* 148 N. Y. 652 (43 N. E. 68, 31 L. R. A. 776, 51 Am. St. Rep. 727).    Nearly half a century ago the Supreme Court of the United States said in reference to such instruments:

" 'It is no less the interest of the shareholder, than the public, that the certificate representing his stock should be in a form to secure public confidence, for without this he could not negotiate it to any advantage.    It is in obedience to this requirement, that stock certificates of all kinds have been constructed in a way to invite the confidence of business men, so that they have become the basis of commercial transactions in all the large cities of the country, and are sold in open market the same as other securities.    Although neither in form or character negotiable paper, they approximate to it as nearly as practicable.'    *Bank* v. *Lanier,* 11 Wall. 369, 377.

"As was said by the same court in *National Safe Deposit Co.* v. *Hibbs,* 229 U. S. 391 (33 Sup. Ct. 818), these principles are well known to business men and are constantly acted upon by them.    So where the owner of stock in a corporation places his stock certificates indorsed in blank in the hands of another to dispose of them for a prescribed purpose and the agent, disregarding the direction of his principal, pledges the certificates as a security for a loan to himself, the owner is estopped from denying the lien acquired by the pledgees providing they acted in good

faith and without notice of any limitation upon the authority of the agent.    *McNeil* v. *National Bank*, 46 N. Y. 325 (7 Am. Rep. 341) ; *Knox* v. *Eden Musee Americain Co.*, 148 N. Y. 441 (42 N. E. 988, 31 L. R. A. 779, 51 Am. St. Rep. 700).

"The essential features of *Russell* v. *Telephone Co.*, 180 Mass. 467 (62 N. E. 751), closely resemble those of the present case.    The plaintiff's testatrix had intrusted a certificate of stock, indorsed in blank, to a fraudulent agent, who, instead of using it for the designated purpose, obtained an advance from the defendant by giving the certificate in pledge.    It was contended that as the agent had obtained possession of the certificate by fraud, it was obtained by larceny in the judgment of the law; but the court held that the rule that the property would not pass when the instrument was stolen was not based upon the name of the agent's crime, 'but upon the fact that in the ordinary and typical case of theft the owner has not intrusted the agent with the document and, therefore, is not considered to have done enough to be estopped as against a purchaser in good faith.'    The court went on to say that in such a case the owner certainly has not done enough if the estoppel is based upon the principle that when one of two innocent persons is to suffer, the sufferer should be the one whose confidence put into the hands of the wrongdoer the means of doing the wrong.    'But in a case like the present the agent has been intrusted with the converted property, and it is totally immaterial whether, by a stretch which extends larceny beyond the true field of trespass, his wrong has been brought within the criminal law or not.    The ground of the estoppel is present and the estoppel arises.' "

The decree is affirmed, with costs to defendants.

SHARPE, C. J., and STEERE, FELLOWS, CLARK, and McDONALD, JJ., concurred with WIEST, J.