L. M. Fansher, Guardian, Appellant, v. People's Trust & Savings Bank, Appellee.

GUARDIAN AND WARD: Authority—Authority to Borrow—Scope.
1 Court authority to a guardian to *borrow* money for the support and education of the ward is no authority to *hypothecate* the ward's property as security for the loan.

GUARDIAN AND WARD: Authority—Borrowing and Hypothecating
2 Without Authority. A ward's estate is liable for money borrowed by the guardian and actually used for the use and benefit of the ward's estate, even though such borrowing was without authority of the court; but if the guardian has, without authority, hypothecated the ward's property as security for the loan, the hypothecation must be released, on proper application, to the guardian, especially when the hypothecation embraced the entire property of the ward.

GUARDIAN AND WARD: Jurisdiction—Approval of Unauthorized
3 Act—Effect. A court order which impliedly approves a former unauthorized hypothecation by a guardian of the ward's property as security for a loan does not deprive the probate court of jurisdiction over the hypothecated property.

Headnote 1: 28 C. J. p. 1136 (Anno.) Headnote 2: 28 C. J. pp. 1165, 1269 (Anno.) Headnote 3: 28 C. J. p. 1269 (Anno.)

Headnote 1: 12 R. C. L. 1145.

*Appeal from Mahaska District Court.*—Henry F. Wagner, Judge.

October 18, 1927.

This is an action to recover possession of a mortgage and note. From a decree entered herein the guardian appeals.—*Modified and affirmed.*

· ·· *Irving C. Johnson,* for appellant.·  ·

*Thomas J. Bray,* for appellee.

ALBERT, J.—Sometime in the year 1920, one J. B. Mitchell was appointed guardian of his granddaughter, Helen E. Jewell, a minor. The corpus of his ward's estate consisted of an in-

1. GUARDIAN AND WARD: authority: authority to borrow: scope.

terest in a tract of land, which was ordered sold by the court, and the total purchase price of $11,500 was put into a mortgage and note for that amount, dated June 22, 1920, and payable to said Mitchell, as guardian. This estate consisted of no other property, either real or personal. This guardian borrowed from the People's Trust & Savings Bank $600 at one time, and shortly thereafter, an application was made to the court, and an order made in relation thereto. The material part of this order, which is dated December 9, 1922, is as follows:

"It is hereby ordered that the guardian, J. B. Mitchell, give an additional bond in the sum of $20,000, and he is hereby authorized to sell said mortgage of $11,500, and that he is authorized to make the best sale possible and investigation possible; but he is hereby authorized to care for, protect, maintain the said Helen E. Jewell,· educate and school her, from the money left her ·by her father, Plinney Jewell, and· make the best deal he can, and sell said first mortgage of $11,500, and repay any sums procured for her support and maintenance."

Subsequent to the making of this order, Mitchell assigned the mortgage and note of $11,500 to the People's Trust & Savings Bank, as collateral security, and from time to time continued, as guardian, to borrow money from the bank, the total sum borrowed being about $2,400. He took up the various notes given by him from time to time for the amounts borrowed from the bank, and included the same with the then new interest in a note for $2,479.31. Later, this guardian having made no reports or inventory to the court, and being called upon to account, filed his resignation as such guardian, and L. M. Fansher was substituted as such guardian. In the settlement made between the two guardians, to which this bank was not a party, it was found by the court, after trial, that the original guardian was indebted to the estate, after all due credits had been

given him, in the sum of $1,646.50 (the date of this settlement being October 1, 1925), plus the $11,500, making a total due the ward of $13,146.50, and Mitchell was ordered to account to the present guardian for $13,290.15. Of said sum, $11,500 was in the form of a mortgage securing a note, and a balance of $1,790.15 was ordered paid in money to the new guardian; who was found to be entitled to the possession of the aforesaid note and mortgage. The new guardian was also directed to bring action against the bank, to recover possession of the note and mortgage, and also to sue on the bond of Mitchell, as guardian. The new guardian proceeded to bring action against the People's Trust & Savings Bank for the possession of said mortgage, together with $575, one year's interest. The bank defended on numerous grounds, among which they justify their possession and right to hold said mortgage and note, by reason of an order of court herein set out:

Another ground of defense is that the money borrowed from the bank was used for the benefit of the ward, by way of support, maintenance, and education, and therefore that the ward's estate received the benefit thereof, and thus they are justified in holding said mortgage and note until they are repaid. The matter was tried in equity, resulting in a decree finding that there was due the bank from said estate the sum of $2,109.70. The bank was permitted to retain possession of the mortgage and note, and judgment was rendered against the present guardian for such amount, with directions to him to pay the aforesaid amount to the bank; and upon such payment the bank was ordered to turn over, within four months from the date of the decree, the aforesaid mortgage and note to the present guardian; and on failure so to do, the defendant was given the right to foreclose and sell said collateral, as a pledge, to make the amount of its judgment, interest, and costs. The appellant in his brief and argument says:

"Two ultimate questions are presented in this appeal: First, was there an order of court authorizing the guardian Mitchell to borrow money and pledge the note and mortgage of his ward therefor? Second, if there was such an order, has the defendant shown that the money borrowed by the guardian went into the estate of the ward and enhanced and augmented

it, and therefore make the estate of the ward equitably liable for such borrowed money?"

To these propositions we will now give attention.

Section 12581, Code of 1924, provides:

"Guardians of the property of minors * * * may * * * lease lands, loan money, and in all other respects manage their affairs, under proper orders of the court or a judge thereof."

It is apparent from this section of the statute that whatever powers the guardian wishes to exercise he must do so under the order of the court or a judge thereof. It is the claim of the appellee herein that the hypothecation of this mortgage and note with it was authorized by the order of the court hereinbefore set out. If we turn now to the order of the court, it will be noted that this order provides, first, that the guardian shall put up an additional bond in the sum of $20,000; second, he is authorized to sell a mortgage of $11,500; and the order further proceeds:

"But he is hereby authorized to care for, protect, maintain said Helen E. Jewell, educate, and school her, from the money left her by her father, Plinney Jewell, and make the best deal he can, and sell said mortgage of $11,500, and repay any sums procured for her support and maintenance."

What does this quoted part of the order mean?

The duty of caring for, protecting, and maintaining the said Helen E. Jewell is a part of the duties of a guardian; but in carrying out these duties, he needs no order, as the same is inherent in the relationship existing between them. The order also provided that he shall "educate and school her" from the money left her by her father. We do not conceive that this is an open order to the guardian to expend any and all amounts of money that he may see fit, for the purposes specified. The part of the order that deserves most serious consideration is the part that provides that the guardian "shall repay any sums procured for her support and maintenance," and a correct interpretation of this clause is a matter of serious dispute between the parties. As heretofore stated, before this order was signed, the guardian had borrowed $600 from this bank, and the contention of the appellant is that this part of the order was only intended as a ratification by the court of the borrowing of this $600, and an order to repay the same; while appellee contends

that the word "procured," as used herein, was intended to convey the idea that he was not only to repay the sums that he had already borrowed, but such sums as he might borrow in the future for her support and maintenance. In the application on which this order was made, it was recited that the mortgage and note above referred to were the total assets of the estate of Helen E. Jewell, and that the income therefrom was not sufficient to support, maintain, and educate her. In the light of these facts and the surrounding circumstances, we are disposed to hold that the intent and purpose of this order were to cover not only money previously borrowed, but that which might be borrowed in the future for the purposes specified. We more readily reach this conclusion because, in the proceedings in which the settlement was made by the court between the two guardians, the money thus borrowed by the guardian was taken into consideration in making said settlement, and charged against the then guardian. But this in no way disposes of the question before us, and that is, was there any authority, under the law or under the order of the court, for Mitchell, the guardian, to hypothecate this mortgage and note as collateral and to assign the same by written assignment which has since been made of record? We held, in *McMannis v. Rice,* 48 Iowa 361, that an order to an administrator to sell property would not justify his mortgaging the same. See, also, 28 Corpus Juris 1134-1135; *O'Herron v. Gray,* 168 Mass. 573 (47 N. E. 429). The consensus of opinion seems to be that simple authority from the court to a guardian to borrow money does not warrant the guardian in hypothecating securities for the money thus borrowed. The order in the instant case, in our opinion, was not broad enough to warrant the hypothecation of these securities, and the guardian's action in so doing has never been approved by the court or a judge thereof. It logically follows, therefore, that Mitchell, in hypothecating these securities, acted without authority, and his action in so doing must be held to be voidable.

We have, however, a settled rule in this state that, where a guardian exceeds his authority and borrows money and uses that money for the use and benefit of the estate, even though he

**2. GUARDIAN AND WARD: authority: borrowing and hypothecating: without authority.** has funds in the estate itself, such estate is liable for the amount actually received by it. Such was our pronouncement in *In re Estate of Manning,* 134 Iowa 165, based on our previous decisions of *Dunne v. Deery,* 40 Iowa 251; *Deery v. Hamilton,* 41 Iowa 16; *Simpson v. Snyder,* 54 Iowa 557; *Iowa Loan & Tr. Co. v. Holderbaum,* 86 Iowa 1. In the *Manning* case we said:

"If the money received from the bank was in fact used for the benefit of the estate, any mismanagement of the estate's affairs could not defeat the bank's right to recover, unless it was a party to such mismanagement."

Appellant in his brief and argument recognizes the existence of the rule, but insists that the evidence in the case does not show that the loans made by appellee to the guardian went to the use and benefit of the ward's estate. This is a fact question, and the lower court held against this contention of appellant's. It is shown that, owing to the condition of the money market at the time in question, the mortgage could not have been sold without a sacrifice of at least $3,500 of the principal. The bank advised the guardian that he had better not sell the mortgage, but borrow, to meet the needs of the ward, until there were better prospects of realizing on the mortgage. We think that this advice was timely, and shows good faith on the part of the bank. No evidence in the case was directed specifically to this question, but the plaintiff did introduce in evidence the report of the guardian Mitchell, together with his application for discharge, and among other things it is there recited:

"That the guardian had borrowed, from time to time, a sum from the bank, appellee, and the funds so secured were expended for the care, keep, clothing, schooling, and incidental expenses of the said ward, and because of said guardianship and expenses thereof, to the best of his knowledge and belief."

This testimony is not denied, and to our minds this is sufficient to carry a finding made by the district court that the money loaned by the defendant bank to said guardian was used for the support and maintenance of the ward; and further, that the ward received the benefit of the money loaned by the defendant bank, to the full amount thereof. The district court entered judgment against the present guardian, appellant here-

in, for the amount found to be due the bank, in the sum of $2,109.70, which included the interest up to the date of the entry of the judgment, together with an order that the present guardian pay the same. So far, the action of the court is approved. The court, however, in addition in its decree, provided that the bank should continue to hold the mortgage and note in question until the judgment above specified was paid. So far as we are able to learn from the record, the only assets in the hands of the present guardian belonging to his ward's estate are the mortgage and note in controversy. The district court ordered that the guardian should pay this within four months from the date of the decree. If this be all of the assets as guardian, it is apparent that the judgment so rendered must be paid from this mortgage and note, either by sale or hypothecation thereof, under order of court, so long as the same remain in the hands of the bank. We are unable to see just how this guardian can raise the funds necessary to pay this judgment, without the possession of the mortgage and note. We have held that hypothecation of the same to the bank was void in the first instance, and we therefore are of the opinion that so much of the order of the district court as permitted the bank to retain the possession of the mortgage and note is erroneous; and the decree so entered will be modified to the extent that the mortgage and note are directed to be returned to the guardian, and in view of the fact that the same have been assigned of record, that the bank reassign the same to the guardian.

It is further ordered that, on receipt of said mortgage and note, the said guardian shall make application to the district court for authority to either sell or hypothecate said mortgage and note, and that, from the proceeds thereof or any other money that may come into his hands, within 60 days from the date of the filing of this opinion he pay to the said bank the aforesaid amount, with 6 per cent interest thereon from the 6th day of May, 1926, and report same to the district court of Mahaska County, Iowa, which court shall have jurisdiction to enforce these orders and all future proceedings with reference thereto.

If it should be contended that the decree entered in this case below was an approval of the hypothecation of this note and mortgage, on the theory that the court has a right to ap-

3. GUARDIAN AND
   WARD: jurisdic-
   tion: approval
   of unauthorized
   act: effect.

prove an act which it had the right to authorize in the first instance, and if, therefore, it be said that the hypothecation hereof was in fact approved by the court subsequent to delivery to the bank, yet we think that the district court did not thereby surrender its jurisdiction over the hypothecated property, and that the disposal thereof by the bank must be made under the direction and subject to the approval of the court. It is for this reason that we make the above orders.—*Modified and affirmed.*

EVANS, C. J., and STEVENS, DE GRAFF, and MORLING, JJ., concur.