## Denny and the Exchange Bank of Pittsburgh *versus* Electa Lyon.

*Transfer of Stock for specific purpose when exhausted.—Release of Debtor, Effect of on Collateral Securities held by Creditor.*

1. Where the owner of stock executed and delivered to a friend a power of attorney, authorizing the person named therein to transfer it to ———; with the understanding that it was to be used in satisfaction of a particular creditor of the friend, whose name was afterwards inserted in the power by him, *Held*, that the authority of the attorney was exhausted by inserting the name of the creditor whose debt was to be secured by the transfer, and that when that debt was paid, the principal was entitled to a return of the stock, notwithstanding the attorney had transferred it as security for other debts, by erasing the name first inserted and inserting another in the blank which had been left in the letter of attorney when it was executed.

2. Where the stock was held as collateral security for a promissory note of the attorney in fact, endorsed by a third party, and the holder released the endorser for the purpose of making him a witness in a proceeding in equity, for its recovery at the suit of the original owner of the stock, it was held that the stock, even if rightfully held, was released by this act, without the consent of the owner, and could not be held for the purpose of enforcing payment of the note.

APPEAL from the decree of the District Court of *Allegheny county.* In Equity.

This was a proceeding in equity by Electa Lyon against William Denny and the Exchange Bank of Pittsburgh, in which the complainant prayed for a preliminary injunction, enjoining and restraining Denny from making, and the Exchange Bank from permitting or suffering to be made on the books of the bank, a transfer of twenty-eight shares of capital stock of the bank, and for a decree ordering the transfer of said shares to complainant. The *subpœna* issued in proper form, and was served on W. H. Denny and on T. M. Howe, president of the Exchange Bank, August 6th 1858.

The pleadings and evidence in the cause presented, substantially, this case :—

The complainant was the owner of twenty-eight shares of Exchange Bank stock, which she intrusted to her son, Martin S. Lyon, to enable him to raise money to carry on his business, executing, at the same time, the following letter of attorney :—

"For value received, I hereby constitute and appoint W. H. Denny my true and lawful attorney, for me and in my name to transfer to ——————, —— shares in the capital stock of the Exchange Bank of Pittsburgh.

"Done at Beaver, this 31st day of January 1855.

"ELECTA LYON.

"Witness present, THOMAS LYON."

[Denny *v.* Lyon.]

There was no person named in the power of attorney as transferee, but the complainant proved, by the subscribing witness, that the certificate of stock and letter of attorney were delivered to M. S. Lyon, for the purpose of using said stock as collateral security for the payment of a note held by Preston & Wagner, and for no other purpose, whose names were written thereon by M. S. Lyon, and afterwards erased, and William Noble inserted, and then that erased, and the name of W. H. Denny, agent, inserted, under an arrangement by which the debt was put in the shape of a note drawn by M. S. Lyon and endorsed by William Noble. Preston & Wagner's note was paid by Noble, with funds remitted by M. S. Lyon from St. Louis. The stock was pledged a second time by Lyon, and held by Denny, who claimed to retain it as agent for Mrs. Aspinwall, as collateral security for a note for $2500, drawn by M. S. Lyon and endorsed by Noble.

For the purpose of introducing the testimony of Mr. Noble into the cause, his incompetency as a witness was removed by a release, executed by Mrs. Aspinwall.

The court below, on hearing, held that the stock was specifically pledged for the debt to Preston & Wagner, and could not be held by Mrs. Aspinwall, and that even if Mrs. Aspinwall had at one time right to hold the stock, her release to Noble operated to discharge it; directing Denny and the bank to make and permit a retransfer of the stock to Mrs. Lyon, and to pay to her the dividends drawn by Denny or held by the bank, with costs. From which decree the respondents appealed, assigning the same for error.

*H. Brady Wilkins* and *Charles Shaler*, for appellant.

*Hamilton* and *Acheson*, for appellees.

The opinion of the court was delivered, May 6th 1861, by

Woodward, J.—This bill was filed to compel Dr. Denny and the Exchange Bank to retransfer to the plaintiff twenty-eight shares of the capital stock of the said bank, which the plaintiff alleges she loaned to her son Martin S. Lyon, for the purpose of pledging them, under a power of attorney executed by her in blank, as collateral security for a debt which he owed to Preston & Wagner. That debt having been paid, Mrs. Lyon reclaims her stock.

The respondents deny that the stock was loaned to Martin to be pledged for the debt of Preston & Wagner or any other specific debt, and allege that it was loaned to him for the purpose of raising money generally to assist him in carrying on his business, and that after his debt to Preston & Wagner had been paid, he obtained a new loan, on the credit of this stock, from Nancy Harding through Dr. Denny, and that Annie R. Aspinwall, hav-

[Denny *v.* Lyon.]

ing purchased the loan and all its securities of Mrs. Harding, the stock is now held in trust for her until the debt is paid.

There is no doubt that Martin S. Lyon made this second pledge of the stock for the purposes alleged in the answer, but there is no evidence that he did it with the knowledge or consent of his mother. The question therefore becomes very material whether she in the first instance placed this stock in his hands to be hypothecated to Preston & Wagner specifically, or to be used generally for obtaining money in the market as his necessities might require. Her son Thomas Lyon, who was the subscribing witness to the power of attorney, swears that " the certificate of stock and power of attorney were delivered to M. S. Lyon for the purpose of using said stock as collateral security for the payment of a certain note held by Preston & Wagner against the owners of the steamboat W. H. Denny, and for no other purpose." The witness explains that of that boat his brother Martin was part owner; that Preston & Wagner, who had furnished the engine, required security for their debt; that the debt was put into the form of a note drawn by Martin S. Lyon and endorsed by William Noble, and that the mother's stock was to be transferred as collateral security for the note. To the same effect is the testimony of Martin himself. And what corroborates these witnesses with considerable force is the fact that Dr. Denny filled up the blank in the power of attorney with the names of Preston & Wagner. It may be, as is alleged, that he did not know when the power of attorney was first delivered to him, that the purpose of it was to secure Preston & Wagner; but he must have understood this purpose before the transaction was consummated—else why did he insert their names? As executed by Mrs. Lyon, the power authorized Dr. Denny, as her attorney in fact to transfer her stock to anybody; but as filled up by him, it was a special power authorizing him to transfer it to Preston & Wagner.

Such proof goes very far to sustain the allegation of the bill that the complainant parted with her stock only for the purpose of securing Preston & Wagner, and that Denny understood this purpose.

And yet we have to look at the palpable fact that a mother gave her son in business a letter of attorney directed to Dr. Denny, authorizing him to transfer her stock to any name that might be inserted; that the son first pledged it to Preston & Wagner, and then caused the attorney in fact to borrow more money on it, and to pledge it to himself as agent of the lady creditors above named. What if the original purpose was to secure Preston & Wagner?—was not this giving a son an opportunity to obtain money on false pretences? How could she know the power of attorney would be used only for the benefit

of Preston & Wagner, or for them at all? If she meant it only for them, why did she not say so? May a lady put her stock with a blank power of attorney into market, and, when she finds it transferred *bonâ fide* to secure a creditor who advanced money on the faith of it, come into equity and have the transfer cancelled, on the ground that that was not the creditor whom she meant her stock should protect?

That must be regarded as very poor ground for equitable relief. In most cases it would be unfit to bottom a decree upon.

But this case is distinguished by one important circumstance. Mr. Murray, the cashier of the bank, swears that the name of the transferee is usually not inserted in the power of attorney, and that it is more convenient not to have it inserted. We know that this is the commercial usage. It was probably originated by the banks. If not, they have countenanced it, and thus brought people to practise it. And yet it is a vicious usage, which no considerations of convenience are sufficient to justify. *Malus usus abolendus est.* A power of attorney signed, generally sealed, and duly delivered, what is it but a finished legal instrument? Who may alter that paper writing to the prejudice of another, without incurring liability to the charge of forgery? If commercial usage permit the attorney to insert the names of Preston & Wagner and then erase them, then insert the name of William Noble and next erase it, and then insert his own name as agent, what other legal instrument may not commercial usage tamper with in like manner? How striking an illustration of the badness of this usage we have in this case, is seen when we consider that Mrs. Lyon's title to her bank stock is made to depend on what may happen to have been inserted, without her knowledge or consent, in a legal instrument wherein she was instructed to leave a blank.

Issuing her power in blank, implies, say the defendants, her intention to pledge her stock to any creditor who should loan money to her son. Filling up the blank with the name of Preston & Wagner implies, she argues, that the defendants knew she had issued it only for the benefit of that particular firm. Erasing their names and inserting his own as agent of other creditors, says Dr. Denny, makes the transfer under it legal and valid. No, she rejoins, you exhausted your power when you inserted Preston & Wagner. And out of this forensic game of shuttlecock and battledoor, we are expected to educe the equities of parties that shall determine the title to the stock.

Well, if it must be done, we will say, without intending a precedent, that Mrs. Lyon, having proved her allegation that she transferred the stock only to secure Preston & Wagner, is entitled to a return of it, seeing that their debt has been fully paid. If it be said that issuing the power in blank was an authority to

[Denny *v.* Lyon.]

insert any name, it is a sufficient answer that the name actually inserted was in accordance with the truth, and exhausted the authority.

We feel the more satisfaction with this conclusion, because we apprehend the release of Noble in order to make him a witness discharged the suretyship of Mrs. Lyon. If the defendants hold her stock as collateral security for the note of Martin S. Lyon, endorsed by Noble, and may enforce a transfer of the stock in payment of the debt, it is too plain for debate that she would be entitled to the note and the security of Noble as endorser. Yet the defendants have released him without her consent. A creditor who receives a collateral security from a third party is bound, if he avails himself of the collateral, to preserve the original debt, for in equity the surety will be entitled to subrogation to it; and to release an endorser is so to impair the debt as to discharge the surety.

The decree below is affirmed.