HALL v. WAGNER et al.

(Supreme Court, Appellate Division, First Department. February 9, 1906.)

1. CORPORATIONS—TRANSFER OF SHARES—ESTOPPEL TO DENY TRANSFER.

An owner of corporate stock had the same transferred in the name of her stockbrokers, to enable them to collect the dividends, and deposited the certificate with them as security for a loan. On desiring to pay off the loan she sent a check for the amount thereof to the brokers, who gave the messenger who delivered the check the certificate of stock, with a power of attorney to transfer it, signed by them. The messenger, instead of delivering the certificate to the owner, turned the same over to defendants, who had it transferred in their own name, and subsequently sold the same on the messenger's order. *Held* that, as the owner of the

stock had not conferred any apparent title or authority to transfer the title on the messenger, she was not estopped to deny defendants' title thereto.

2. WITNESSES—COMPETENCY—TRANSACTIONS WITH DECEDENT.

On an issue of title to shares of stock claimed by plaintiff to have been transferred without authority to defendants, by one who obtained possession of them for plaintiff's testatrix, the person who made the transfer and under whom defendants claimed, and who would himself be liable to defendants in case of failure of their title, was incompetent to testify for defendants to transactions with plaintiff's testatrix, under Code Civ. Proc. § 829, providing that a party or person interested in the event, or a person under whom such party or interested person derives his title, shall not be examined as a witness in his own interest, or on behalf of the party succeeding to his interest, against the executor of a deceased person, concerning a personal transaction between the witness and the deceased person.

3. TRIAL—RECEPTION OF EVIDENCE—REBUTTAL—DISCRETION OF COURT.

How far counsel should be allowed to go upon rebuttal is largely within the discretion of the trial court.

4. WITNESSES—IMPEACHMENT—CONTRADICTION IN COLLATERAL MATTER.

Where it was attempted to be shown that plaintiff and her husband, who was acting for her, had acquiesced in the claim of a witness for defendant to ownership of stock in question, and the witness testified on his direct examination to conversations with plaintiff and her husband in relation to the stock, and on cross-examination that he showed the paper on which his claim was based to plaintiff's husband, rebuttal testimony of the husband, denying that the witness had shown the paper to him, was competent, and was not subject to the objection of contradicting the witness on a collateral matter.

Laughlin and Houghton, JJ., dissenting in part.

Appeal from Trial Term, New York County.

Action by Elna B. Hall, as executrix of Josephine B. Clopton, deceased, against Otto Wagner and others. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Affirmed.

Argued before O'BRIEN, P. J., and INGRAHAM, McLAUGHLIN, LAUGHLIN, and HOUGHTON, JJ.

William M. Seabury, for appellants.
James L. Bishop, for respondent.

INGRAHAM, J. The plaintiff sues to recover the value of 100 shares of the first preferred stock of the Erie Railroad Company, alleged to have been the property of the plaintiff's testatrix. The evidence is undisputed that the plaintiff purchased and paid for this stock; that the stock was delivered to her and at her request was transferred in the name of Webb & Prall, stockbrokers, to enable them to collect the dividends; that on July 7, 1903, she borrowed the sum of $2,000 from Webb & Prall, depositing this 100 shares of stock with them as collateral security for the loan; that on April 12, 1904, she called up the main office of Webb & Prall on the telephone and stated that they had a loan in her name; that she wanted to pay it off; and inquired as to the amount of interest, which was stated to be $68.90, to which she said: "All right, I am going to send down for it soon." On the same day the plaintiff's testatrix's check for the amount of the loan and interest was delivered to Webb & Prall, and they delivered to the mes-

senger who delivered the check the certificate of stock, with a power of attorney to transfer it signed by Webb & Prall, so that the stock could be transferred to the person presenting the certificate. There was no written order to deliver the stock to the messenger who delivered the check paying the loan, and the only authority to deliver it was contained in this telephone message by which the plaintiff's testatrix is said to have informed the representative of Webb & Prall that she intended to send for the stock. The messenger who took this check and received the stock was one Weyant. It appeared that he had transacted business for the plaintiff's testatrix and had been engaged in stock speculations with her, in which apparently they had been jointly interested. On the day after this transaction the plaintiff's testatrix died. Weyant testified that he received this certificate from Webb & Prall when he delivered the check paying off the loan; that he retained it until August 14, 1904, after the death of the plaintiff's testatrix; that he then took it to a firm of stockbrokers named Wagner, Schalk & Co., the defendants in this action, and delivered it to them to be credited to his account, and subsequently directed the stock to be sold. Immediately after the defendants received this stock, they had it transferred in their own name, and subsequently, upon the order of Weyant, sold the stock and accounted to him for the proceeds.

The court submitted to the jury the question as to whether Weyant was the owner of the stock or had an interest in it, and charged them that, if they find that Weyant had an interest in the stock, they should find a verdict for the defendants, and also instructed them:

"If you conclude that Weyant did not own the stock, and that he has no such interest in the stock as has been claimed by the defendants, and that he was simply the messenger sent by Mrs. Clopton to the banking firm of Webb & Prall to deliver the check and to receive the custody of this certificate, for the purpose of delivery back to Mrs. Clopton, that he had no interest or authority beyond that, then he committed a criminal act when he negotiated this certificate of stock with the defendants in this case, an act which cannot be permitted to prejudice the rights of the estate of Mrs. Clopton. If you find those facts to be as I have last described them, the plaintiff is entitled to a verdict."

To this defendants excepted, and requested the court to charge that the rights of the defendants in this case did not depend upon the actual title or authority of the party with whom they dealt directly, but were derived from the act of the real owner, which precluded her from disputing as against them the existence of the title or power which through negligence or mistaken confidence she caused or allowed to appear to be invested in the party with whom they dealt. This request the court refused, and the defendants excepted. There was evidence introduced by the defendants which it is claimed was sufficient to show that Weyant had an interest in the stock, but the evidence was certainly not conclusive, and, the jury having passed upon that question of fact, we must assume that Weyant had no title to the stock.

The substantial question is whether, on the evidence presented, the jury would have been justified in finding that the plaintiff's testatrix had conferred upon Weyant an apparent title to the stock which would have estopped her or her representatives from disputing his title. This position of the defendants is based upon a principle established by

a line of authorities of which McNeil v. Tenth Nat. Bank, 46 N. Y. 325, 7 Am. Rep. 341, is a leading case. This principle is thus stated:

"It must be conceded that as a general rule, applicable to property other than negotiable securities, the vendor or pledgor can convey no greater right or title than he has. But this is a truism, predicable of a simple transfer from one party to another where no other element intervenes. It does not interfere with the well-established principle that, where the true owner holds out another, or allows him to appear, as the owner of, or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power, which through negligence or mistaken confidence he caused or allowed to appear to be vested in the party making the conveyance. * * * The true point of inquiry in this case is whether the plaintiff did confer upon his brokers such an apparent title to, or power of disposition over, the shares in question, as will thus estop him from asserting his own title, as against parties who took bona fide through the brokers. Simply intrusting the possession of a chattel to another as depositary, pledgee, or other bailee, or even under a conditional executory contract of sale, is clearly insufficient to preclude the real owner from reclaiming his property, in case of an unauthorized disposition of it by the person so intrusted. The mere possession of chattels, by whatever means acquired, if there be no other evidence of property or authority to sell from the true owner, will not enable the possessor to give a good title. But if the owner intrusts to another, not merely the possession of the property, but also written evidence over his own signature of title thereto, and of an unconditional power of disposition over it, the case is vastly different. There can be no occasion for the delivery of such documents, unless it is intended that they shall be used, either at the pleasure of the depositary or under contingencies to arise. * * * In the present case, the plaintiff delivered to and left with his brokers the certificate of the shares, having indorsed thereon the form of an assignment, expressed to be made 'for value received,' and an irrevocable power to make all necessary transfers. The name of the transferee and attorney and the date were left blank. This document was signed by the plaintiff, and its effect must be now considered."

It was under that state of facts that the court held that the plaintiff was estopped from denying the right of the plaintiff's broker to transfer the stock. The principle announced in this case has been much discussed, and in Knox v. Eden Musee American Co., 148 N. Y. 441, 42 N. E. 988, 31 L. R. A. 779, 51 Am. St. Rep. 700, it was somewhat limited. The court there said:

"The case of McNeil v. Tenth National Bank is a leading case on the subject, and marks the limit to which the court has hitherto gone in subordinating the rights of the true owner of a stock certificate to the title of a transferee derived under one who, being in possession of the certificate by the consent of the true owner, has transferred it in fraud of his rights. That case held that the agent to whom the owner has delivered a certificate of stock duly indorsed for transfer, with a limited power of disposition for a special purpose, may bind the title thereto as against the true owner by transferring it to a bona fide transferee who has no notice of the limitations of the agent's authority, although the transfer was made for an unauthorized purpose and with the intention on the part of the agent to commit a fraud on his principal. * * * The courts have been frequently importuned to extend the qualities of negotiability of stock certificates beyond the limits mentioned, and clothe them with the same character of complete negotiability as attaches to commercial paper, so as to make a transfer to a purchaser in good faith, for value, equivalent to actual title, although there was no agency in the transferrer and the certificate had been lost without the fault of the true owner, or had been obtained by theft or robbery. But the courts have refused to accede to this

view, and we have found no case entitled to be regarded as authority which denies to the owner a stock certificate which has been lost without his negligence or stolen, the right to reclaim it from the hands of any person in whose. possession it subsequently comes, although the holder may have taken it in good faith and for value. The precise question has not often been presented to the courts, for the reason probably that they have with great uniformity held that certificates were not negotiable instruments in the broad meaning of that phrase, but, whenever the question has arisen, it has been held that the title of the true owner of a lost or stolen certificate may be asserted against any one subsequently obtaining its possession, although the holder may be a bona fide purchaser."

To establish this estoppel it must appear that the true owner had conferred upon the person who has diverted the security the indicia of ownership, or an apparent title or authority to transfer the title. The reasoning in all the cases negatives the extension of the principle to a case where a stock certificate such as the one in question has been stolen, or fraudulently obtained from the true owner, for there the owner of the stock had by no voluntary act conferred upon the third party the indicia of ownership, apparent title, or right to transfer the stock; and so I assume that, if the owner of a certificate of stock, with a valid transfer executed by the person in whose name the stock stood, should give it to a messenger to be carried to a bank for safe-keeping and that messenger on the way should divert the stock and transfer it to a bona fide purchaser for value, such a transfer would not estop the owner from asserting title, for the reason that the owner had never conferred upon such a messenger an apparent title, or the indicia of ownership. The plaintiff's testatrix, on the 12th of April, when this certificate of stock was in the possession of Webb & Prall, her brokers, was the owner of the stock, as was found by the jury upon evidence sufficient to sustain the finding. Assuming that Webb & Prall were authorized to deliver the certificate of stock to the messenger who presented plaintiff's testatrix's certified check to pay the loan, there was no authority for Webb & Prall to deliver this stock to the messenger in such a condition that the messenger would be invested with the apparent ownership, or authority to transfer it. By no act of the plaintiff's intestate did she confer upon Weyant the ownership of the stock or the right to transfer or dispose of it. It cannot be assumed that she intended that the stock should be transferred to Weyant, or that Webb & Prall should deliver it to Weyant with a power of attorney in blank which would authorize Weyant to transfer the stock. It was her stock. She sent for it, but neither authorized Webb & Prall nor any one else to transfer it to Weyant, or to the defendant, nor gave any apparent authority to either of them for that purpose. No act of the plaintiff's testatrix was sufficient to estop her or her estate from insisting upon her title to the stock in the hands of the defendant, or any one else; and, unless it is intended to confer upon certificates of stock the attributes of negotiable instruments, which the courts of this state have uniformly refused to do, the claim that the defendants here acquired, as against the plaintiff's testatrix, or as against her estate, any title to this stock, cannot be sustained.

The only other points to be considered are those arising on the exceptions to rulings upon questions of evidence. Weyant was called for the defendant and testified that he had financial relations with the

plaintiff's testatrix; that he knew that in November, 1901, 100 shares of the Erie preferred were purchased by Ennis & Stoppani for the benefit of the testatrix; that he was with the plaintiff's testatrix when she took this 100 shares of stock to Webb & Prall about July 27, 1902; that the plaintiff's testatrix went to the office of Webb & Prall with the certificate and had it transferred in the name of Webb & Prall so that they could receive the dividends on behalf of the plaintiff's testatrix; that on the afternoon of April 12, 1904, he went to the office of Webb & Prall with a check for $2,000 and the interest, and took up a certificate of 100 shares of Erie first preferred; that this certificate stood in the name of Webb & Prall, who had signed a blank power of attorney on its back, without any name being filled in as transferee, and he took the certificate back to the house of the plaintiff's testatrix. He was then asked whether he delivered the certificate of stock to the plaintiff's testatrix. This was objected to, the objection sustained, and the defendant excepted. He then testified that he retained this certificate exclusively in his possession until August 14, 1904, when he delivered it to the defendants, and that he then notified Mr. Hall, the husband of the plaintiff, to that effect; that he had a conversation with Mrs. Hall (plaintiff) with reference to the certificates; that he subsequently directed the defendants to sell the stock, which they did, and turned the proceeds over to him. He then identified the signature of the plaintiff's testatrix to an instrument which was offered in evidence. The defendants claimed that it was error to sustain these objections to conversations between the witness and the plaintiff's testatrix, upon the ground that they were incompetent under section 829 of the Code of Civil Procedure. That section provides that:

"Upon the trial of an action, * * * a party or a person interested in the event, or a person from, through or under whom such a party or interested person derives his interest or title, by assignment or otherwise, shall not be examined as a witness, in his own behalf or interest, or in behalf of the party succeeding to his title or interest, against the executor, administrator or survivor of a deceased person, * * * concerning a personal transaction or communication between the witness and the deceased person."

We think this evidence was properly excluded, upon the ground that the witness derived his interest or title from the deceased within the provisions of this section. Weyant transferred this stock to the defendants, who accepted it and sold it upon his order and accounted to him for the proceeds. Their defense is that Weyant was the owner of the stock and entitled to dispose of it, and that their title as transferee of Weyant was a good title. It would be a direct violation of this provision of the statute to allow their title to be sustained by the testimony of Weyant as to personal transactions with the testatrix to show that Weyant had a title to the stock. The declarations of the plaintiff's testatrix as to the ownership of the stock are only relevant to prove the claim of the defendant that Weyant had acquired title to the stock from the plaintiff's testatrix, and that he had the right to transfer it to the defendants. To allow this testimony would therefore have been to allow the person through whom the defendants claimed the stock to testify to a personal transaction with the deceased which would divest her of title and vest it in the person from whom the de-

fendants claimed to have acquired title. I think it was also incompetent because Weyant was a person interested in the successful maintenance of this defense. If the defendants are liable, he would then be clearly liable to them for the proceeds of this stock that he had transferred to them. He was therefore directly interested in the result, within Redfield v. Redfield, 110 N. Y. 671, 18 N. E. 373.

The appellant also claims that it was error to allow the husband of the plaintiff to contradict the testimony of Weyant, upon cross-examination, that he showed the witness a copy of this instrument upon which the claim of the defendants to the ownership of this stock was based some time after the death of the testatrix. Weyant, in his direct examination, had testified that he retained this certificate of stock exclusively in his possession until April 14, 1904, when he left it with the defendants; that he had notified Mr. Hall, husband of the executrix, to that effect; that he took Mr. Hall down to Ennis & Stoppani and introduced him to them, told them who he was, and told them about the Erie first preferred, and about drawing the check for $2,000. Subsequently, on motion of counsel for the plaintiff, this statement as to what the witness told Mr. Hall was stricken out. The witness also testified to a conversation with Mrs. Hall with reference to this certificate. Upon cross-examination he testified that he showed the paper upon which the defendants' claim to the stock was based to Mr. Hall, but never showed it to Mrs. Hall; that he told her about it, and she said it was all right, she did not want to see it; that he showed it to Mr. Hall a few days after Mrs. Clopton's death, when he went down to Ennis & Stoppani's office, and at that time produced this identical paper just as it was then, and showed it to Mr. Hall on the Rector Street elevated station; that he showed it to him for the purpose of explaining the Erie first preferred. In rebuttal the plaintiff called Hall, who testified that he was the husband of the plaintiff, and was asked whether he had ever seen this paper which Weyant said he had shown to him. That was objected to as incompetent, immaterial, and irrelevant, and an attempt to contradict a witness put upon the stand by the defendant and examined as to a collateral issue by the plaintiff. This objection was overruled, and the defendants excepted. I do not think this was error. Weyant, on his direct examination, had testified that he had had conversations with both Mr. and Mrs. Hall in relation to this stock. The cross-examination of Weyant by the plaintiff was in relation to these conversations about which he had testified in chief. The examination of Weyant, as to what took place at these interviews about which he had testified, was strictly a cross-examination, and not testimony called forth by the plaintiff whereby she made the witness her own. As to just how far counsel should be allowed to go upon rebuttal is largely in the discretion of the court, and while the rule is well settled that, where a party upon cross-examination inquires into strictly collateral matter that has no relation to the examination in chief, it is not competent for him to call a witness to contradict or disprove the testimony thus given, nevertheless, where the examination has relation to the subject upon which the witness has testified upon direct examination, it is not a collateral matter which cannot be contradicted. Weyant, in his testimony, endeavored to create the impression that the

plaintiff and her husband, who was acting for her in settling the estate, had acquiesced in his claim to the ownership of this stock; and I think it was a legitimate cross-examination to inquire of the witness just what statements he had made to the plaintiff or to her husband upon which he asked the jury to base that conclusion. I do not think, therefore, that it was error to allow the witness Hall to deny the statement made by Weyant as to his conversations or interviews with Hall.

There are other exceptions to rulings upon testimony, but they do not require discussion.

I think that the judgment and order should be affirmed, with costs.

O'BRIEN, P. J., and McLAUGHLIN, J., concur.

LAUGHLIN, J. I dissent, on the ground that it was error to receive Hall's testimony in contradiction of Weyant's.

HOUGHTON, J. I dissent, on the ground that the objection was not sufficient to raise the question of Weyant's competency as a witness; the objection being to the competency of the evidence merely.