GARFIELD BANKING CO. v. ARGYLE, et al.

No. 4174.   Decided December 30, 1924.   (232 Pac. 541.)

1.   APPEAL AND ERROR—RIGHT OF TRIAL JUDGE TO WEIGH EVIDENCE CONSIDERED. The appellate court in passing on weight of evidence in equity cases should always consider that trial court is not bound to give the same weight or effect to all statements of the several witnesses.

2.   CORPORATIONS—OWNER OF CORPORATE STOCK INDORSED IN BLANK CANNOT PREVAIL AGAINST BONA FIDE PLEDGEE ON GROUND THAT LOAN WAS FOR LIMITED PURPOSE AND AMOUNT. Where the owner of a certificate of corporate stock indorsed the same in blank and delivered it to another, who pledged it to plaintiff as collateral security for his promissory notes, the owner cannot prevail against a bona fide pledgee for value on ground that the loan and indorsement of the certificate was for a special

purpose and limited amount, of which the pledgee had no notice.[1]

3. CORPORATIONS—ACT OF FIRST PLEDGEE IN FILLING IN BLANK POWER OF ATTORNEY ON CERTIFICATE OF STOCK HELD NOT NOTICE TO SUBSEQUENT PLEDGEES OF LIMITATION OF PLEDGOR'S RIGHTS. That original pledgee of certificate of stock had written its name in the blank power of attorney on back of certificate, *held* not notice to subsequent pledgees of a limitation of pledgor's right as against owner to pledge certificate.

Appeal from District Court, Third District, Salt Lake County; *A. R. Barnes,* Judge.

Action by the Garfield Banking Company against Ben E. Argyle and others. Judgment for plaintiff, and defendant Mary J. Richards appeals.

AFFIRMED.

*Clark, Richards & Bowen,* of Salt Lake City, for appellant.

*H. A. Smith & Son* and *R. G. Lucas,* all of Salt Lake City, for respondent.

FRICK, J.

Plaintiff brought this action in the district court of Salt Lake county against the defendants Ben E. Argyle and Zella D. Argyle to recover judgment upon two promissory notes given to plaintiff upon a certificate of stock which was pledged to secure the payment of said notes. Mary J. Richards was made a party to the action for the reason that she claimed to be the owner of said certificate of stock. The defendants Ben E. and Zella D. Argyle did not appear in the action. Mrs. Richards appeared and filed an answer in which she denied plaintiff's right to said certificate, and, in a counterclaim, set up ownership thereto in herself. Plaintiff, in effect,

---

[1] *Brown* v. *Wright,* 48 Utah, 633, 161 P. 448.

See (1) 4 C. J. p. 897; (2) 14 C. J. p. 733; (3) 14 C. J. p. 734.

denied the facts set forth in the counterclaim. The case was tried to the court without a jury. The court, after finding that the notes in question were duly executed and delivered by Ben E. and Zella D. Argyle to the Commercial Bank of Spanish Fork and that the defendant Mrs. Richards on a certain day was the owner of the capital stock mentioned therein, and that she had indorsed said certificate in blank and delivered it to Ben E. Argyle, and that said Ben E. Argyle had pledged the same to the Commercial Bank of Spanish Fork to secure the payment of a loan of $8,000, further found:

"That on or about the said 28th day of April, 1920, said defendant, Mary J. Richards, indorsed said certificate of stock, in blank, and then and there delivered said certificate of stock so indorsed in blank, to the defendant Ben E. Argyle for the purpose of enabling said Ben E. Argyle to negotiate a loan on the security of said stock, and with the expectation and understanding that said Ben E. Argyle would negotiate a loan with the use of said certificate as collateral. * * *"

The court also found:

"That in so negotiating and obtaining said loan from said Commercial Bank of Spanish Fork, and in delivering and pledging said stock certificate as security for the note given for said loan as aforesaid, said defendant Ben E. Argyle did not purport to or undertake to act, so far as said Commercial Bank of Spanish Fork was concerned, as agent for said Mary J. Richards, but, on the contrary, said Ben E. Argyle then and there purported to and obtained said loan for his own personal, individual account, and undertook to and purported to deal with and pledge the said stock certificate as his own property. And said Commercial Bank of Spanish Fork had no knowledge or notice of any interest, right or claim of the defendant Mary J. Richards of, in, or to said stock certificate, but was an innocent and bona fide taker of said stock for value. * * *"

After finding that said stock certificate was afterwards pledged to secure a loan from McCornick & Co., Bankers, for the purpose of paying the loan of $8,000 obtained from the said Commercial Bank of Spanish Fork, the court further found:

"That said McCornick & Co., Bankers, had no knowledge or notice of any interest, right, or claim of the defendant Mary J. Richards of, in, or to said certificate, or the stock represented thereby, but was an innocent and bona fide taker of said stock for value.

The court, after further finding that, after the loan obtained from said McCornick & Co., Bankers, fell due, said Argyle obtained a further loan from plaintiff to pay the amount obtained from McCornick & Co., Bankers, further found:

"That at the time the plaintiff, the Garfield Banking Company, made said loan of $6,000, and took said stock certificate as collateral security therefor, as aforesaid, it had no knowledge or notice of any right, title, interest, or claim of the defendant Mary J. Richards of, in, or to said stock certificate, but, on the contrary, was an innocent and bona fide taker thereof for value and without notice. * * *"

After finding that plaintiff's notes had been renewed, the court also found:

"That the defendant Mary J. Richards is the owner of said certificate of stock, subject however to the right, title, interest, lien, and claim of the plaintiff, the Garfield Banking Company, of, in, and to the same as pledgee, holding the said stock as security for the payment of said two notes of May 27, 1921, one for $5,400 and the other for $600, as aforesaid, in accordance with the terms of said notes. * * *"

The court's findings go into every detail of the several transactions respecting the loans made by the Argyles, and the pledging of the stock certificate. In view, however, that those findings are not assailed we have set forth only so much of the findings as are objected to. Mrs. Richards, hereinafter called appellant, alone appeals from that part of the judgment in which the court adjudged that the stock certificate was pledged to secure the notes in question, and that plaintiff's equities, in and to said certificate to the extent of the loan made by it, were superior to those of the appellant. She insists that the findings hereinbefore set forth are not supported by the evidence and are contrary thereto. She also assails the conclusions of law, but if it shall be determined that the findings are not vulnerable to her objections then the conclusions of law must prevail.

We have carefully examined the evidence, and, while it is true that if the case could be determined upon the testimony of appellant alone, without considering the testimony of other witnesses and the inferences deducible therefrom, there might

be considerable force to her contention, when, however, all the evidence is considered, as it must be, the findings are not only not contrary to but are in harmony with the great weight of the evidence. The foregoing statement is based upon the evidence as it appears in the record without taking into consideration the fact that the trial court was not bound to give the same weight or effect to all the statements made by the several witnesses. When that factor is considered, as it always should be by this court in passing upon the weight of evidence in equity cases, we can see no escape from the conclusion that the findings of the court are amply supported by the evidence.

This leaves for consideration only the law applicable to the facts as found. While it is true that appellant's property is taken for another's debt, yet it is not taken without her consent. When she indorsed her stock certificate in blank and delivered it to the defendant Argyle, she invested him with all the indicia of title and ownership, and if he abused the confidence reposed in him and appellant suffered a loss, she, and not the plaintiff, must bear such loss. Appelland, according to her own testimony, indorsed the certificate in blank and delivered it to Argyle to procure a loan of money. True, she says that the loan was to be for a special purpose and for a limited amount. If that be so it cannot avail her as against plaintiff for the reason that she failed to limit Argyle's power and right to dispose of the certificate in such form as to impart notice to one dealing with the certificate in good faith. The finding of the court is that neither of the banks who loaned money upon the certificate had any notice or knowledge of any limitation of power so far as Argyle was concerned. In view of that, therefore, the equities of the plaintiff are superior to those of the appellant.

In our judgment there is little, if any, diversity of opinion respecting the foregoing statement. *Brown* v. *Wright,* 48 Utah, 633, 161 P. 448, and cases there cited; *Northwestern P. C. Co.* v. *Atlantic P. C. Co.,* 174 Cal. 308, 163 P. 47; *McNeil* v. *Tenth Nat. Bank,* 46 N. Y. 325, 7 Am. Rep. 341; *Fowles* v.

*Bank,* 167 Cal. 653, 140 P. 271.   The foregoing cases will all
be found to be directly in point and in them many other au-
thorities are cited.   It is needless, however, to multiply cases.

   *McNeil* v. *Tenth Nat. Bank, supra,* is a leading case respect-
ing the rights of a pledgee of stock certificates indorsed in
blank by the owner named in the certificates and pledged by
another person.   It is there held that the rights of the pledgee
·who takes the certificates in good faith and without notice
are superior to the rights of the true′ owner of the certificates.
That case has been so often cited, approved and followed by
the courts, that the doctrine therein announced may be re-
garded as the settled law of this country.   See 4 N. Y. Ann.
Dig. pp. 1048 to 1057, where a large number of the cases are
collated.   Appellant, however, cites and relies on *Knox* v.
*Eden Musee Co.,* 148 N. Y. 441, 42 N. E. 988, 31 L. R. A. 779,
51 Am. St. Rep. 700; *Hall* v. *Wagner,* 111 App. Div. 70, 97
N. Y. S. 570, and *Denny* v. *Lyon,* 38 Pa. 98, 80 Am. Dec. 463.
While appellant cites other cases it is not necessary to refer
to them because the foregoing illustrate the character of all of
the cases, cited by her.

   In the case of *Knox* v. *Eden Musee Co.,* the case of *McNeil*
v. *Tenth Nat. Bank* is distinguished, and a mere cursory read-
ing of the opinion in the *Musee Case* shows that the *McNeil
Case* is clearly distinguishable.   In *Hall* v. *Wagner,* supra, a
stock certificate was pledged after the owner's death, and
under circumstances where, as stated in the opinion, the
owner of the certificate "had never conferred   *   *   *   an
apparent title or indicia of ownership" upon the person who
wrongfully disposed of the stock and obtained the proceeds
thereof.   That case, therefore, has no application to the case
at bar.   Nor can the case of *Denny* v. *Lyon,* supra, be given
controlling influence in this case.   While it is true that the
Supreme Court of Pennsylvania went farther in that case
in favor of appellant's contention than the modern authorities
justify, yet even that case falls short of holding that in a case
like the one at bar the owner of the stock can prevail over
the rights of the pledgee in good faith without notice.

   Appellant's counsel, however, insist that the fact that the

cashier of the Commercial Bank of Spanish Fork, the original pledgee of the certificate, had written its name in the blank power of attorney on the back of the certificate was notice to the other pledgees that there was a limitation of Argyle's right to pledge the stock. A sufficient answer to that is that appellant imposed no such limitation, and she never knew that the bank had written its name in the blank power of attorney. Moreover, the writing in of its name by the bank was not intended as a limitation. When the loan for $8,000 became due and remained unpaid, the cashier of the bank intended to have the stock certificate transferred on the books of the corporation issuing the stock, but when Argyle obtained a loan from McCornick & Co., Bankers, the original certificate was delivered to McCornick & Co., Bankers, without any transfer. The Commercial Bank of Spanish Fork, however, never claimed any interest in the certificate after the loan from it was paid, and, in order to set at rest any contention that it might have some interest in the stock certificate, the bank made a special assignment of all its rights to plaintiff. Indeed, in view that the certificate was pledged to secure the $8,000 loan, the bank never had any interest in the certificate after the loan was paid. The mere fact, therefore, that the cashier had filled in the bank's name as before stated, under the facts and circumstances of this case had no effect upon the plaintiff's rights whatever.

The judgment is affirmed, with costs.

WEBER, C. J., GIDEON and CHERRY, JJ., and DILWORTH WOOLLEY, District Judge, concur.

THURMAN, J., did not participate herein.