## HOWARD v. NATIONAL COPPER BANK et al.

No. 5128. Decided April 6, 1933. (20 P. [2d] 610.)

494

See, also, 16 P. (2d) 712.

*B. Clegg* and *J. Louis Brown,* both of Salt Lake City, for appellant.

*Dan B. Shields* and *A. H. Hougaard,* both of Salt Lake City, for respondents.

MOFFAT, Justice.

Some time in January, 1917, Thomas A. Howard, the plaintiff and appellant, borrowed from Isaac Brockbank, his brother-in-law, the sum of $150, and gave his promissory note as evidence of the obligation. To secure the note Howard indorsed and delivered to Brockbank certificate No. 94 of the Upper Canal Irrigation Company, for 18.7 shares

of stock of said company. At the time of delivery the stock certificate was indorsed by Howard as follows:

"For value received I hereby sell, assign and transfer unto Isaac Brockbank———shares of the Capital Stock represented by the within certificate, and do hereby irrevocably constitute and appoint Isaac Brockbank to transfer the said stock on the books of the within named corporation with full power of substitution in the premises. Dated Jan. 23, 1917. Thomas A. Howard."

The trial court found and the evidence so discloses that Thomas A. Howard paid the note in full on or about 1923. Neither the note nor the stock certificate was returned to Howard. Request therefore had been made and return promised. Brockbank probably left the stock certificates in his safety deposit box. By 1926 or 1927, Isaac Brockbank having attained the age of about 88 or 89 years became somewhat impaired. His son, Lucas T. Brockbank, largely took charge of his father's affairs. In January, 1926, Lucas T. Brockbank, made application to the National Copper Bank, the other defendant herein, for a loan without security. The bank demanded security. Lucas T. Brockbank having secured possession of the stock certificate, but just how the evidence does not disclose, then produced and offered certificate No. 94 for 18.7 shares of the capital stock of Upper Canal Irrigation Company as security. To the certificate which Thomas A. Howard had delivered to Isaac Brockbank indorsed as above set forth, there was added either at the time Lucas T. Brockbank applied for the loan, or previously, the evidence does not definitely disclose, another indorsement reading as follows:

"For value received I hereby sell, assign and transfer unto ——————— ——————— shares of the capital stock represented by the within certificate and do hereby irrevocably constitute and appoint ——————————— to transfer the said stock on the books of the within named corporation with full power of substitution in the premises

"Dated———————

"Isaac Brockbank by L. T. Brockbank, his attorney in fact."

This indorsement except the signature was typewritten. The indorsement signed by Thomas A. Howard, and filled in as above set forth, was the usual script printed upon the certificate. When L. T. Brockbank, sometimes referred to also as Lucas T. Brockbank, presented the certificate, or indorsed it, an officer of the bank with whom he was dealing asked Brockbank, "what authority" he had for that indorsement. Mr. Brockbank thereupon produced a power of attorney, which the bank insisted be placed of record in the county recorder's office. This power of attorney, omitting formal parts and acknowledgment, reads as follows:

"I, Isaac Brockbank, a resident of Holliday, Salt Lake County, State of Utah, hereby nominate and appoint my son, L. T. Brockbank, a resident of the same place, my true and lawful attorney for me and in my name, place and stead, to manage all my business of every kind whatsoever, and to care for and control all my property, and I hereby expressly authorize and empower him to ask, demand, receive and receipt for any and all moneys and property of every kind belonging to me, or to which I am entitle, and in case of necessity, to bring suit to procure the same, and to take any other lawful means to procure any and all of my property and to protect and keep the same for me and in my name and for my benefit, and to lease and collect rentals from all of my property.

"And I further hereby authorize him to sell any and all of my property of all kind, real or personal, and I hereby authorize and empower him to do in my name and place and to any extent, any and all things that I can do personally, with the exception that I require that in the sale of any real property my consent and signature thereto shall be required, and in drawing any cash out of the bank, my joint signature with said agent shall be required.

"I hereby ratify and confirm any and all acts of my said agent hereunder.

"In witness whereof, I hereunto sign my name this 15th day of January, A. D. 1926.

"Isaac Brockbank"

Thereupon the bank made a loan to L. T. Brockbank personally, took a note therefor, a copy of the power of attorney, the stock certificate in question, and a collateral agreement by the terms of which L. T. Brockbank "delivered to The

National Copper Bank * * * the following securities: * * * 18.7 shares Upper Canal Irrigation Co. as collateral security for the payment of any and all promissory notes," etc.

The total loans at different times made by the bank amounted to $1,550 besides interest, etc., for which the bank claims a lien upon the stock in question as security. Thomas A. Howard made demand upon the bank for the surrender to him of the stock certificate as soon as, or shortly after, he learned of the alleged hypothecation to the bank. This was refused and suit brought against both the bank and Lucas T. Brockbank for possession of the stock or the value thereof, alleged to be the sum of $1,900. The bank answered the complaint and claimed to be an innocent purchaser for value and without notice, and counterclaimed or cross-complained against L. T. Brockbank demanding judgment of no cause of action on the part of plaintiff and for the amount due on the several notes of L. T. Brockbank, and for foreclosure and sale of the stock alleged to have been pledged by L. T. Brockbank to the bank. L. T. Brockbank defaulted and the trial court gave the plaintiff judgment against defendant L. T. Brockbank for the sum of $1,900, denied plaintiff, Thomas A. Howard, any relief against the defendant bank, and gave the bank judgment against L. T. Brockbank for the amount prayed and for foreclosure and sale of the stock evidenced by said certificate No. 94. Plaintiff appeals.

The appellant assigns eight errors, only one of which need be discussed. The other assignments relate to collateral matters in so far as the appellant is concerned or are included in the assignment here under examination. Appellant complains that the trial court erred in finding that the National Copper Bank had no notice that Lucas T. Brockbank had no authority to pledge the certificate of stock involved in the transaction, and that the loans for which the stock was pledged were for the personal use and benefit of Lucas T. Brockbank, and that the bank was charged with

notice, and that Lucas T. Brockbank had no authority to pledge the property of his principal for his own benefit.

The trial court in its memorandum decision indicated a reliance upon the case of *Garfield Banking Co.* v. *Argyle,* 64 Utah 572, 232 P. 541, and quoted from Colebrook on Collateral Securities and cases cited. If the facts in the instant case permit the application of the rules of law laid down in the case of *Garfield Banking Co.* v. *Argyle,* supra, which we think are in accord with the great weight of authority and in accord with cases heretofore cited by this court, and therein cited, the position taken by the trial court is correct. We think the facts in this case do not bring this case within the rule in the case of *Garfield Banking Co.* v. *Argyle,* supra, and other blank indorsement cases.

At the outset it must be conceded that upon one aspect of the case the facts of the Argyle Case are quite analogous to the instant case. Briefly the facts as found by the court in that case and there stated in detail are: Mrs. R. was the owner of the capital stock. She indorsed the certificate in blank, and delivered it to A with authority to pledge it. Thereupon A pledged it to C bank as security for the payment of a note. A did not purport or undertake to act as agent for R so far as C bank was concerned, but obtained a loan on his own personal account in the sum of $8,000. C bank had no knowledge or notice of any interest, right, or claim of R in the stock. The stock certificate was afterwards pledged to secure a loan from M bank for the purpose of paying the loan to C bank. M bank had no knowledge or notice of any interest or claim of R in the stock certificate; but was an innocent holder for value. After the loan from M bank fell due a loan was obtained from G bank for the purpose of paying M bank, G bank likewise taking said certificate without knowledge or notice or any right of claim of R. It also appears that the cashier of C bank, the original pledgee, had written the name of C bank in the blank power of attorney on the back of the certificate. The C bank, however, assigned any rights it had to the certificate to G

bank. There is at least one important variance in the facts in the instant case. Here the certificate was not indorsed in blank. Thomas A. Howard when he delivered the certificate to Isaac Brockbank filled in the name of Isaac Brockbank, in both the assigning part and the power of attorney part of the indorsement. The certificate therefor in the instant case was not indorsed in blank. It is to be observed as above indicated that the so-called power of attorney or indorsement contains two distinct elements. 1. "I hereby sell, assign and transfer unto————— (in this case Isaac Brockbank)—————shares of the capital stock represented by the within certificate."

That part of the indorsement just quoted constitutes the assigning or pledging part of the indorsement, and when indorsed in blank, the certificate then by virtue of such blank is set in possible circulation with implied authority in the hands of the holder to fill in the name of any one to whom he wishes it transferred.

As was said in *Austin* v. *Hayden,* 171 Mich. 38, 137 N. W. 317, 322, Ann. Cas. 1915B, 894, and often quoted:

"While certificates of stock are not, strictly speaking, commercial or negotiable paper under the law merchant, like promissory notes or bills of exchange, yet the recognized usage of indorsing such certificates *in blank* [italics added] and so transferring title, to them and what they represent, by delivery has given them a quasi negotiable character to such an extent that they are often held, as they pass from hand to hand, free from undisclosed antecedent equities."

But when the assignment is to a particular person, may it still be said that the certificate still possesses a quasi negotiable character. Really there are no elements of negotiability in the assignment as such. The doctrine that the owner of shares is estopped to assert his title against a purchaser or pledgee for value from one whom he has clothed with apparent title or authority is entirely aside from the doctrine of negotiability. It is fundamentally the doctrine of estoppel. A stock certificate indorsed in blank containing a power of attorney is general and the holder may fill

in the name of any one to whom he decides to transfer the certificate. The holder or pledgee is clothed with authority, there being no notice or knowledge to the contrary.

The second part of the indorsement constituting the power of attorney is a separate matter from the assigning part of the indorsement and it may be in blank or special. In this case the power of attorney part of the indorsement is a special or restricted indorsement. The power given by Thomas A. Howard was limited to the transferring of the stock to Isaac Brockbank, as was likewise the transferring power. No one had authority to transfer or assign that certificate to any one else. To hold that such indorsement is not restrictive or special is equivalent to holding that the pledgee has authority to erase his own name and thereby after the indorsement to one in blank, and by an unauthorized act raise an estoppel against the owner without his knowledge or consent. As indicated the other part of the indorsement is the power irrevocably given to blank——— (in this case Isaac Brockbank) "to transfer the said stock on the books of the within named corporation, with full power of substitution in the premises."

This power gave to Isaac Brockbank power to transfer the stock or to authorize or substitute another to make the transfer on the books of the company. The transfer however, was limited to Isaac Brockbank.

We have not overlooked the situation in *Garfield Banking Co.* v. *Argyle,* supra, where it was argued that the original pledgee of the certificate had written its name in the blank power of attorney on the back of the certificate was notice to the other pledgees. Replying to that contention the court answered that no such limitation was imposed when the certificate was originally indorsed in blank. In addition the original pledgee made a special assignment to the holder of the stock, the last pledgee.

We are therfore of the opinion that the cases cited relating to indorsement of stock certificates in blank and the rights of subsequent purchasers and pledgees do not apply

with the same force to the instant case that they do to a case where the certificate is indorsed in blank. There is a further difficulty and one that seems decisive of this case. An examination of the power of attorney produced by Lucas T. Brockbank upon the bank's demand for authority for Lucas T. Brockbank to indorse the certificate will disclose that no power is therein contained authorizing Lucas T. Brockbank to indorse the certificate in question or to sign that document or any other document in behalf of Isaac Brockbank for the personal use or benefit of Lucas T. Brockbank.

The first paragraph of the two paragraphs of the power of attorney from Isaac Brockbank to L. T. Brockbank, nominate and appoint L. T. Brockbank "to manage all my business, * * * care for and control all my property * * * receive and receipt for any and all moneys * * * and property * * * belonging to me * * * to bring suits and to protect and keep the same for me in my name and for my benefit." All power authorized in the second paragraph is "to sell any and all of my property of all kinds, real and personal, and to do any and all things that I can do personally, with the exception that I require that in the sale of any real property my consent and signature thereto shall be required."

All things to be done under and in pursuance of that power of attorney are of necessity for the benefit of the maker thereof, Isaac Brockbank. No benefit could come to Isaac Brockbank by L. T. Brockbank pledging stock in the hands of Isaac Brockbank, the property of another, to secure a personal obligation of L. T. Brockbank. The power to borrow money does not exist among the powers granted, not even for Isaac Brockbank or for his benefit, far less for the use and benefit of L. T. Brockbank. The taking of property of Isaac Brockbank, even if it be conceded for the moment that the stock in question actually belonged to Isaac Brockbank, was a dealing with the property of another under a trusted and fiduciary relationship, a self-dealing on

the part of L. T. Brockbank amounting to fraud and in no way binding upon Isaac Brockbank. There was nothing in the situation misleading in any way to the bank, but on the contrary everything to put them upon notice in so far as the certificate of stock and the claimed power of attorney was concerned. The demand of the bank for authority on the part of L. T. Brockbank clearly shows the bank was not relying upon the indorsement of Thomas A. Howard, but if upon anything the ownership of Isaac Brockbank, and there was no sufficient indorsement on the certificate at the time it was presented, to satisfy the bank as to any right to transfer from Isaac Brockbank, hence, the demand for the authority. The error, if any existed, was on the part of the bank in not sufficiently examining the purported authority, or understanding the extent of the authority under which L. T. Brockbank purported to use property not his own to secure his own obligation.

If this were a suit by Isaac Brockbank, manifestly the bank would have no defense against him. It seems likewise clear that the bank stands in no better position to defend against the claim of Thomas A. Howard. There is neither negligence nor estoppel revealed by the evidence against him, or for that matter, against Isaac Brockbank. The bank placed its reliance upon L. T. Brockbank and there it must remain.

A case quite analogous to the instant case interpreting a power of attorney is that of *Huntsman* v. *Huntsman*, 56 Utah 609, 192 P. 368, involving a power of attorney, broader in its terms than the one before us, where it was held that under a power to sell, the attorney in fact under the authority granted could not give the property away, or sell for a mere nominal consideration.

Any sale of hypothecation made by L. T. Brockbank would of necessity under the power of attorney be for the benefit of Isaac Brockbank. Hypothecating a security, even if it were the property of Isaac Brockbank, to secure a debt or obligation of his attorney in fact is not for the benefit of the maker of the power of attorney

nor within the purview of the power conferred. Further the bank was charged with notice that either Isaac Brockbank or Thomas A. Howard was the owner of the stock tendered to it as security for L. T. Brockbank's obligation, and being so charged and put upon inquiry it was clearly the duty of the bank, before accepting the security, to pursue the inquiry, and having failed to do so, and apparently relying upon the insufficient power of L. T. Brockbank, its equity cannot be considered as against the legal title of the plaintiff. *Gowans* v. *Rockport Irrigation Company*, 77 Utah 198, 293 P. 4. This is not a case of a stock certificate indorsed in blank, and the cases applying to the blank indorsement cases do not apply here.

We are therefore of the opinion that the trial court was in error, and the judgment of dismissal of the complaint of the plaintiff as against the National Copper Bank is reversed, and the trial court is directed to reinstate the case and proceed in accordance with the views herein stated. Appellant to recover costs.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.