PEOPLES BANK *v.* JONES *et al.*

No. 14060. APRIL 14, 1942.

*Ezra E. Phillips,* for plaintiff.

*MacDougald, Troutman & Arkwright, Dudley Cook, Arnold, Gambrell & Arnold, Alston, Foster, Sibley & Miller,* and *Moise & Post,* for defendants.

GRICE, Justice. ■ The stock certificate was issued on September 5, 1928. Therefore the uniform stock-transfer act, approved March 23, 1939 (Ga. L. 1939, p. 384), has no application, since section 23 of that act in effect declares that its provisions apply only to certificates issued after its approval. This case must be decided keeping in view the most peculiar character of the indorsement appearing on the certificate. It may well be doubted whether any court will ever be confronted again with similar facts. Met, as this court is, with the unusual conditions here shown, the problem nevertheless is to ascertain and apply certain underlying principles by which the decision must be governed.

The certificate was issued to Mrs. Annie Miller Jones. She turned the stock over to her son W. T. Jones, to be used by him as a pledge to the Atlanta Journal Company as security for the faithful performance by the son of his duties as an employee thereof in case he was employed. The employment was terminated, and the stock so pledged to the Journal by the son was delivered back to him. The Peoples Bank got possession of the certificate from the son, who represented to the bank that his mother had

made to him a gift of the stock represented by said certificate, and on the faith of such representation it purchased from the son the stock represented by said certificate. Nothing in the petition or in the exhibits can be construed as alleging that the mother parted with her title, except the contention by the bank that the indorsement placed by Mrs. Jones on the certificate estopped her from asserting title thereto as against the plaintiff. The certificate carries in its face the statement that it is "transferable on the books of the company, in person or by duly authorized attorney, upon surrender of this certificate properly indorsed." The allegation is that at the time Mrs. Jones loaned the stock to her son for him to pledge it to the Journal as security for the faithful performance by him of his duties, if he were employed by the Journal, the certificate carried an indorsement by Mrs. Jones, reciting: "For value received I hereby sell, assign, and transfer unto the Atlanta Journal Company" the stock represented by the certificate. It is not charged that the evidence of this assignment to the Journal by Mrs. Jones was ever obliterated or marked out or otherwise stricken; and it must be assumed from the petition that on the subsequent date when the Peoples Bank had its dealings with the son the assignment remained as an indorsement on the certificate. At the time the son pledged it to the bank the only other indorsement that appeared thereon was that shown in the statement of facts, to wit, the rather curious attempt by Mrs. Jones to constitute and appoint some person whose name was left blank to transfer the stock. This latter paper, if we treat it as having been executed by Mrs. Jones, although the allegation is merely that the Journal stamped an indorsement on the certificate, was in the following language:

"November 29, 1938. The Atlanta Journal Co. J. L. Williford, Sect'y & Treas.

". . . . .hereby irrevocably constitute and appoint. . . . . . . . . . . . . . substitute to transfer the within named stock under the foregoing power of attorney, with like power of substitution.

Date                                        Mrs. Annie Miller Jones

Witness W. T. Jones. In presence of Carl G. Caldwell."

This was no transfer of her title to the stock, nor was it irreconcilable with the transfer to the Atlanta Journal Company, hereinbefore referred to. No issue is taken with the contention that

ordinarily a power of attorney to have the stock transferred on the books of the company issuing the same may be valid although the name of the attorney be left blank. But that proposition is far from decisive of the issue here presented. "The assignment and the power of attorney are two separate things. The former operates to vest in the assignee the rights of the assignor as against everybody but the corporation. The power of attorney is an authorization to the corporation to recognize the assignment of said rights." Christy and McLean on Transfer of Stock (2d ed.), § 63. It might be, if there were standing alone a blank power of attorney to transfer stock, such as is usually found printed on the back of stock certificates, that this would carry with it the presumption that the person who executed the power of attorney intended it as an assignment and transfer of the stock itself, or at least an authorization to the one holding the power to transfer the same on the books, to sell and assign the stock itself. But no such case is made by this record: for it also appeared that Mrs. Jones had already sold and assigned the stock to the Atlanta Journal Company. If it could be said that, standing alone, such blank power of attorney to transfer the same on the books of the corporation furnished external indicia of ownership in the third person in possession of said property, and therefore the right of disposing of the owner's property, this could not follow in view of the fact that there was already indorsed on the certificate a sale and assignment thereof to some one else, except that it took with it what appeared on the back of the certificate. The Peoples Bank is an innocent party in this transaction. So is Mrs. Jones. "When one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury shall bear the loss." Code, § 37-113. What did Mrs. Jones do to put it in the power of her son to inflict the injury on the bank? She lent him the stock for the purpose of pledging it to the Atlanta Journal Company. He did so pledge it; and to make the pledge effective, she signed on the back of the certificate a writing selling and assigning the same to the Journal. Her act in selling and assigning the same in writing to the Journal, and delivering the certificate to her son with that transfer written on its back, did not put it in the power of her son to inflict an injury on the Peoples Bank. This transfer indicated that the

Journal, not the son, owned this certificate. "Where an owner has given to another such evidence of the right of selling his goods as, according to the custom of trade or the common understanding of the world, usually accompanies the authority of disposal, or has given the external indicia of the right of disposing of his property, a sale to an innocent purchaser divests the true owner's title." Code, § 96-207. What external indicia of the right of disposing of her property did she give to the son, aside from the fact that she delivered it into his possession at a time when it carried on its back a written transfer and sale thereof to the Atlanta Journal? If the Journal had transferred it to the Peoples Bank, a different situation would have arisen. It is argued that the fact that when the son presented the certificate to the bank the presence thereon of the blank power of attorney supplied the external indicia. We are of the contrary opinion. The blank power of attorney was only a part of what appeared on the certificate of stock. Taken in connection with the other indorsement by Mrs. Jones, it was insufficient to divest the true owner's title, even though a sale thereof had been made to an innocent purchaser. The case as made by the petition is not one where the owner left in blank the name of the person to whom the certificate was to be sold and assigned. The provision such as the one shown in the body of the certificate, that the stock is transferable only on the books of the company, is intended primarily for the protection of the corporation. *Bank of Culloden* v. *Bank of Forsyth,* 120 Ga. 575 (48 S. E. 226, 102 Am. St. R. 115). A decision bearing some of the features of the instant case was *Howard* v. *National Copper Bank,* 81 Utah, 493 (20 Pac. 2d, 610), where it was held that where a stock certificate was indorsed to a named person whose son subsequently pledged it with a bank, the bank was charged with notice that either the indorser or the indorsee was the owner, and that hence the bank's equity could not prevail against the indorser's legal title. The petition and exhibits did not make a case entitling the plaintiff to go to a jury.

■ There was a prayer, "That the gift of said stock as represented by said certificate by the defendant Mrs. Annie Miller Jones, to her son, W. T. Jones, be reformed to comply with the charter, by-laws, rules and regulations of the corporation issuing the same, to make said gift effectual, so that its transfer to peti-

tioner will vest petitioner with the right to dispose of and deal with said stock as said defendants intended when said indorsements were made, and when said stock was delivered to petitioner." Treating this prayer as one to reform the indorsement appearing on the certificate, it does not save the petition from demurrer; for no facts are pleaded to justify a reformation. No fraud on the part of Mrs. Jones is alleged, nor are shown any facts constituting a mutual mistake. *Helton* v. *Shellnut,* 186 *Ga.* 185 (197 S. E. 287).

*Judgment affirmed. All the Justices concur.*